STATE OF NORTH CAROLINA v. LARRY DONNELL SMITH

No. 46

(Filed 6 May 1980)

**1. Criminal Law § 146— sentence less than life imprisonment—appeal to Court of Appeals**

Appeal should have been filed in the Court of Appeals where the minimum sentence imposed was less than life imprisonment.

**2. Criminal Law § 22— absence of formal arraignment—defendant not prejudiced**

While it is the better practice to conduct a formal arraignment proceeding, defendant failed to show that his right to a fair trial was prejudiced by the absence of a formal arraignment where defendant's counsel did indicate to the court that his plea was not guilty, there was no indication that defendant was unaware of the charge against him, and the trial was conducted throughout as an adversary proceeding.

**3. Criminal Law § 57; Robbery § 3— opinion testimony as to caliber of gun**

A robbery victim was properly permitted to testify that the gun used in the robbery "looked to me like it was probably about the caliber of a .38. It was not a big gun," since the victim had ample opportunity to observe the gun during the robbery, and it would have been difficult for the victim to have described the gun's characteristics sufficiently to permit the jury to draw its own inferences.

**4. Criminal Law § 43.2— competency of photograph for illustrative purposes**

The trial court properly allowed the State to introduce a photograph of the interior of a store in which a robbery occurred for the purpose of illustrating the victim's testimony where the victim testified that the photograph was a fair and accurate representation of his store as it appeared at the time of the robbery.

**5. Criminal Law § 99.3— court's question to witness about photograph—no expression of opinion**

The trial judge did not express an opinion or otherwise emphasize the importance of a photograph of the inside of a robbery victim's store when the victim asked the judge if he was to show the photograph to the jury, the judge asked the witness if it portrayed the way the store actually looked, and, upon receiving an affirmative answer, the judge directed the witness to pass the photograph to the jury and directed the witness not to say anything to the jurors.

**6. Criminal Law § 71— shorthand statement of fact**

A witness's testimony that he yelled to a passerby that "somebody had tried to rob [the prosecuting witness], and I would try to keep in sight of the car" did not constitute an opinion on a question of law but was admissible as a shorthand statement of fact.

**7. Robbery § 4.4— attempted armed robbery—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for attempted armed robbery where it tended to show that defendant pulled a gun from under his shirt after he entered a store and pointed it at the proprietor at close range; defendant ordered the proprietor not to move and not to put his hands under the counter; the proprietor raised his hands in the air and defendant ordered him to move away from the counter and to the center of the store; a witness who was driving past the store saw the proprietor with his arms upraised; the witness thereupon turned his vehicle around to return to the store and, as he did so, he saw defendant run from the store.

**8. Criminal Law § 138.7— sentencing hearing—F.B.I. report—reliable hearsay**

In a post-trial hearing to determine the sentence to be imposed upon defendant for attempted armed robbery, the trial court did not err in admitting an F.B.I. fingerprint report which indicated that defendant had a prior conviction in South Carolina for aiding and abetting an armed robbery where the court found that the report was reliable hearsay.

**9. Criminal Law § 138.7— sentencing hearing—privilege against self-incrimination—waiver**

Defendant waived his right to assert that his privilege against self-incrimination was violated at his sentencing hearing when the trial judge propounded questions to him about his prior criminal record where he failed at the sentencing hearing to assert the privilege or to object to the questions.

APPEAL by defendant from judgment of *Bruce, J.,* entered at the 4 September 1979 Criminal Session of BLADEN Superior Court.

Defendant was tried upon an indictment proper in form which charged him with attempted armed robbery. A verdict of guilty was returned by the jury. Following a sentencing hearing, the court entered judgment imposing a prison sentence of not less than 20 years and not more than life.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General David S. Crump, for the state.*

*W. Leslie Johnson, Jr., for defendant-appellant.*

BRITT, Justice.

[1] At the outset we note that this appeal should have been filed in the Court of Appeals since the minimum sentence imposed is less than life imprisonment. *State v. Ferrell,* 300 N.C. 157, 265 S.E. 2d 210 (1980). Even so, we treat the papers filed by defendant in this court as a motion to bypass the Court of Appeals, allow the motion, and consider the case on the merits. G.S. 7A-31.

State v. Smith

[2] Defendant contends first that the trial court erred in proceeding to try him without first having conducted a formal arraignment. This contention has no merit.

The conducting of arraignments is dictated by Article 51 of Chapter 15A of the North Carolina General Statutes. An arraignment is a proceeding whereby a defendant is brought before a judge having jurisdiction to try the offense so that the defendant may be formally apprised of the charges pending against him and directed to plead to them. G.S. § 15A-941 (1978). If a defendant fails to plead after the prosecutor has read the charges or otherwise fairly summarized them, the court must record the fact, and defendant must be tried as if he had entered a plea of not guilty. *Id.* Where there is no doubt that a defendant is fully aware of the charge against him, or is in no way prejudiced by the omission of a formal arraignment, it is not reversible error for the trial court to fail to conduct a formal arraignment proceeding. *State v. McCotter*, 288 N.C. 227, 217 S.E. 2d 525 (1975).

In the present case the record reflects that the assistant district attorney called the cases of defendant, Wayne McKiever, and Curtis Leon McKoy and made a motion to consolidate. With the consent of the three defendants, the motion was allowed. After granting the motion, the court inquired, "[T]he plea is not guilty?" Defense counsel replied affirmatively. The court thereupon told the venire at the beginning of jury selection that the defendants had entered pleas of not guilty. In his instructions to the jury, the trial judge stated that defendants had pled not guilty; he further instructed that an indictment is not evidence of guilt and that the burden of proof was on the state to prove the guilt of each defendant beyond a reasonable doubt.

While it is clear that defendant was not formally arraigned, his counsel did indicate to the court that the plea was not guilty. Furthermore, the trial was conducted throughout as an adversary proceeding. There is no indication whatsoever that defendant was unaware of the nature of the charge. While it is the better practice to conduct a formal arraignment proceeding, defendant has failed to establish that his right to a fair trial was prejudiced by its absence in this case. We perceive no prejudicial error.

[3] During the state's case-in-chief, Larry Nunnery, the owner and operator of a convenience store near Elizabethtown that defendant allegedly had attempted to rob, testified that a black man entered his store wearing a dark jacket; that the man came up to him as he was behind the counter which held a cash register; and that the man had a gun in his jacket. Nunnery went on to describe the gun as being covered by a glove or sock as it was pointed at him. At that point, the following exchange took place.

Q. Would you describe the gun, please.

A. The gun was a dark metal gun, and it looked to me like it was probably about the caliber of a .38. It was not a big gun.

MR. JOHNSON: Objection and motion to strike.

COURT: Read back what he said after 'a .38.'

REPORTER: . . . about the caliber of a .38. It was not a big gun.

COURT: Overruled. Motion denied.

Defendant argues that allowing the witness to testify as to the caliber of the gun was inflammatory and prejudicial. We reject this argument.

Opinion evidence is inadmissible whenever the witness can relate the facts so that the jury will have an adequate understanding of them, and the jury is as well qualified as the witness to draw inferences and conclusions from the facts. *See generally* 1 Stansbury's North Carolina Evidence § 124 (Brandis Rev. 1973). However, it is well settled that opinion evidence is always admissible when the facts on which the opinion or conclusion is based cannot be so described that the jury will understand them sufficiently to be able to draw their own inferences. *E.g., State v. Watson,* 287 N.C. 147, 214 S.E. 2d 85 (1975); *see also* 1 Stansbury's North Carolina Evidence § 125 (Brandis Rev. 1973). Implicit in the rule is the recognition that the limitations of the language may make it difficult or impractical for a witness to describe the facts in detail. *Tyndall v. Harvey C. Hines, Co.,* 226 N.C. 620, 39 S.E. 2d 828 (1946); *State v. Dills,* 204 N.C. 33, 167 S.E. 459 (1933).

Nunnery's description of the gun was competent. He had the opportunity to observe the weapon during the course of the attempted armed robbery. The record indicates that his observation was made from a distance of only about three feet. It is a matter of common knowledge that the size of the bore of a gun barrel depends upon the caliber of the weapon. It cannot be doubted that, with the weapon pointed at him at close range, Nunnery's attention was fixed immutably upon it. It would have been unreasonable to have required him to describe in elaborate detail all of the gun's characteristics in light of the circumstances which surrounded his observation. There was no error.

[4]  Nor was it error for the court to allow the state to introduce a photograph of the interior of Nunnery's store during his testimony. Defendant objects not only to the admission of the photograph but also to the trial judge asking the witness whether the photograph accurately portrayed the way the store looked. Neither contention is meritorious.

A witness may use a photograph to illustrate his testimony to make it more intelligible to the court and jury. *E.g., State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978); *see generally* 1 Stansbury's North Carolina Evidence § 34 (Brandis Rev. 1973). A photograph of the scene of a crime may be admitted into evidence if it is identified as portraying the locale with sufficient accuracy. *State v. Johnson*, 280 N.C. 281, 185 S.E. 2d 698 (1972). So long as the witness is able to testify that the photograph is a fair and accurate representation of the scene, it is irrelevant that the witness did not take the photograph, *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969), *death sentence vacated*, 403 U.S. 948 (1971). Nor is it necessary that the photograph be made at the time of the events to which it relates. *State v. Lester*, 289 N.C. 239, 221 S.E. 2d 268 (1976); *State v. Johnson, supra.*

In the case at bar, the witness Nunnery testified that the photograph was a fair and accurate representation of his store as it appeared at approximately 2:00 p.m. on 6 June 1978, the time and date of the alleged attempted robbery. The threshold test of fair and accurate representation was clearly and properly met. Furthermore, at the time the photograph was received, the trial judge correctly instructed the jury that the photograph was not substantive evidence but was admitted for the limited purpose of

illustrating Nunnery's testimony. *State v. Robinson*, 283 N.C. 71, 194 S.E. 2d 811 (1973); *State v. Frazier*, 280 N.C. 181, 185 S.E. 652, *death sentence vacated*, 409 U.S. 1004 (1972). There was no error.

**[5]** Defendant further objects to the conduct of the judge in receiving the photograph into evidence. After the photograph of the interior of the store was received, the court asked the witness if it portrayed the way the store actually looked. Upon receiving an affirmative answer, the judge directed that the photograph be passed to the jury for their inspection. In directing the witness Nunnery to pass the photograph to the jury, the court further instructed him that he was not to say anything to them.

While a judge should proceed with caution in propounding questions to a witness, *Andrews v. Andrews*, 243 N.C. 779, 92 S.E. 2d 180 (1956); *In re Bartlett's Will*, 235 N.C. 489, 70 S.E. 2d 482 (1952), we perceive no error in this instance. A judge who is presiding over a trial is a responsible participant in an organized pursuit of the truth. While it is improper for a judge to manifest partisanship in any way in his handling of the cause before him, he is under a concurrent obligation to insure that the established rules of evidence and the substantive criminal law are followed to the end that a defendant's right to have a fair trial free from prejudicial error is safeguarded. At the time that the witness was questioned by the judge, he had just been instructed by the district attorney to show the photograph to the jury. On his own motion, the judge instructed the district attorney that he was not to lead his own witness in a description of the interior of the store as it was represented to be by the photograph. Nunnery was evidently confused by the exchange in that he asked the judge if he was to show the picture to the jury. It was at this point that the judge questioned the witness about the sufficiency of the representation. It was only after satisfying himself as to this threshold requirement that the judge allowed the photograph to be circulated among the jury. In directing the witness to take the picture to the jury for their inspection, the court instructed him that he was to say nothing to them. In no way can it be said that the judge expressed any opinion or otherwise emphasized the importance of the exhibit that was tendered. There was no error.

**[6]** During its case-in-chief, the state presented Robert Kinlaw, who was a passerby at the time of the alleged armed robbery. Kinlaw testified that he had yelled at another passerby ". . . to run up to Mr. Lawrence's (Nunnery) store, that he had just—somebody had tried to rob him, and I would try to keep in sight of this car." Defendant's objection to the testimony was overruled.

Defendant contends that Kinlaw's testimony amounts to an impermissible legal conclusion. We disagree. Using the word "rob" as he did, Kinlaw did not express an opinion on a question of law but described what he had seen at Nunnery's convenience store in a shorthand statement of fact. *State v. Pearce*, 296 N.C. 281, 250 S.E. 2d 640 (1979); *State v. Goss*, 293 N.C. 147, 235 S.E. 2d 844 (1977). We perceive no error.

**[7]** The crux of this appeal is whether the trial court erred in denying defendant's motion to dismiss at the close of the state's case and renewed at the close of all the evidence. Resolution of this issue requires that we review the evidence relating to the attempted armed robbery to determine if the state made out a *prima facie* case.

The state's evidence is summarized in pertinent part as follows:

Lawrence "Larry" Nunnery was the owner of a convenience store near Elizabethtown, North Carolina. On 6 June 1978 he was working in the store alone. At approximately 2:00 p.m., defendant came into the store while Nunnery sat behind the check-out counter with his back to the front window of the store. As defendant came through the door, he pulled a gun from under his shirt and pointed it at Nunnery from a distance of about three feet. The handle was covered at the time by a glove or sock. As defendant pointed the gun at Nunnery, he said, "Don't move." Defendant then proceeded to tell Nunnery, "Don't put your hands under that counter." Nunnery responded by raising his hands in the air. Defendant thereupon ordered the proprietor to move away from the counter, directing him to move to the center of the store. Nunnery complied with the command.

At this time, Robert Kinlaw, who was returning to work from lunch, drove past the convenience store. The route which he

usually took in returning from lunch to his job took him in front of the store. It was Kinlaw's custom to wave at Nunnery as he passed the store. As Kinlaw drove past the store and approached the adjacent intersection, he turned his head to look into the store and wave at Nunnery. In doing so, he saw the proprietor of the store with his arms upraised.

Kinlaw thereupon turned his pickup truck around in the intersection to return to the store. As he did, he saw a man, later identified as defendant, run from the store. Defendant and two other men who had been standing outside of the store ran into a nearby clump of woods.

After talking very briefly with Nunnery, Kinlaw drove back onto the highway where he then saw defendant's two companions walking towards a nearby church parking lot. Unable to get any response from the two men other than some mumbling, Kinlaw drove on up the highway to the church where he saw a 1973 or 1974 Ford Torino automobile. He observed that the car's license plate was covered by a towel and that the key was still in the ignition. As another car approached the churchyard, Kinlaw yelled to its driver. By this time, the two men had reached the churchyard and had been warned by Kinlaw not to bother the Torino. Notwithstanding Kinlaw's admonition to them, the men jumped in the Torino and sped off. Kinlaw gave chase in his pickup truck and followed the Torino until it ran off the road a short distance away.

It is an established principle of law that upon a motion to dismiss in a criminal action, all of the evidence, whether competent or incompetent, must be considered in the light most favorable to the state, and the state is entitled to every reasonable inference therefrom. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977); *State v. Poole*, 285 N.C. 108, 203 S.E. 2d 786 (1974). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *State v. Witherspoon, supra; State v. Bolin*, 281 N.C. 415, 189 S.E. 2d 235 (1972). In considering a motion to dismiss, it is the duty of the court to ascertain whether there is substantial evidence of each essential element of the offense charged. *State v. Allred*, 279 N.C. 398, 183 S.E. 2d 553 (1971). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a con-

State v. Smith

clusion. *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 233 S.E. 2d 538 (1977); *Com'r. of Insurance v. Fire Insurance Rating Bureau,* 292 N.C. 70, 231 S.E. 2d 882 (1977).

The two elements of an attempt to commit a crime are: first, the intent to commit the substantive offense; and, second, an overt act done for that purpose which goes beyond mere preparation but falls short of the completed offense. *State v. Powell,* 277 N.C. 672, 178 S.E. 2d 417 (1971); *State v. McNeely,* 244 N.C. 737, 94 S.E. 2d 853 (1956); *see generally* W. LaFave & A. Scott, Handbook on Criminal Law §§ 59-60 (1972); R. Perkins, Criminal Law 552-577 (1969).

The case of *State v. Powell, supra,* is particularly illustrative of these principles as they apply to the facts now before us in defendant's case. In *Powell,* the defendant was indicted for violating G.S. 14-87, the same statute which defendant in the present case stands accused of violating. The state's evidence tended to show that the male defendant entered an ABC store in Winston-Salem wearing a woman's wig and carrying a woman's purse. He then ordered three bottles of liquor, specifying the size and the brand. As a clerk placed the bottles on the counter and began to put them in a bag, he observed that the defendant had placed the purse on the counter, opened it, and was retrieving a pistol from within it. Scared by the sight of the gun, the clerk reached out and grabbed defendant's wrist with one hand and with the other took the pistol from the defendant. By that time, another clerk in the store had drawn his own pistol, which he pointed at the defendant. Thereupon, the defendant raised his hands in the air crying out, "No, man, no." The defendant was tried upon the charge of attempt to commit armed robbery and was found guilty as charged. On appeal, this court held that there was no error.

Our examination of the record now before us impels the conclusion that the trial court properly denied defendant's motions to dismiss in light of our disposition of *Powell.* It will be observed that defendant here went further in his display and use of a firearm than did the defendant in *Powell.* In *Powell,* the defendant was restrained from further action when a store clerk grabbed his wrist and seized the gun *before he was able to withdraw it from the purse.* At no time did the defendant in

*Powell* point the weapon at anybody, nor did he at any time make any demands upon the store personnel other than those which are normally incident to the act of buying. We held in *Powell* that the crime of attempted armed robbery was complete when the defendant procured a pistol from the purse and began withdrawing it with the intent of completing the substantive offense of armed robbery through its use.

The case at bar is governed by the same rationale. Defendant went beyond the conduct dealt with in *Powell*. Defendant not only had obtained possession of a weapon, in this case a .38 pistol, but actually employed it in a manner which was sufficient to enable him to assume control and direction over the actions of Lawrence Nunnery. Not only did defendant pull a gun from under his shirt after he had entered the store, but he actually pointed it at the proprietor at close range. Defendant thereupon ordered Nunnery not to move and not to put his hands under the counter. Having obtained the owner's compliance with his demands, defendant then proceeded to order him to move away from the counter, directing him to move to the center of the store. It was at this point that the intended robbery was interrupted when Robert Kinlaw came upon the scene. But by this time, the crime of attempted armed robbery was complete because defendant had manifested an intent to rob Nunnery and had done an affirmative act beyond mere preparation in furtherance of that intent.

Defendant's reliance upon the case of *State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971), is misplaced. In *Evans*, the defendant and two companions went to a fried chicken restaurant in Winston-Salem. All three men entered the building. One of defendant's companions stood in front of the counter while their take-out order was prepared. At no time did he make any movement toward the cash register. Another companion stood inside the restaurant near the door, cradling a breeched shotgun loaded with shell. When approached by a regular customer of the restaurant, that companion unloaded the gun and left the restaurant as he was directed to do by the customer. At no time did he point the weapon at anybody nor did he make any demands upon anybody in the store. Evans went into the kitchen area and said to an employee of the store, "This is a hold-up; no one's going to get hurt." (Defendant took the stand and denied making the statement, saying that the only reason he went into

the kitchen area was that he was looking for a restroom and that he said nothing to the employee other than to communicate his need to find the facility.) In any event, the employees of the store went about their business. The companion of defendant who had been standing at the counter paid for the take-out order. The three men then got in their car and drove away. On appeal, this court held that the evidence was insufficient to support a verdict finding the defendant and his companions guilty of attempted armed robbery. Writing for the court, Justice Lake observed that the conduct of the defendant and his companions was utterly inconsistent with an attempt to rob. One of the defendants simply stood at a counter while a take-out order was prepared. Another of the defendants left the building and unloaded a shotgun he was carrying after the single remonstrance of one customer. While the state's evidence showed that Evans did make a statement about a holdup, the evidence further showed that the employees of the restaurant completely ignored it and continued performing their tasks.

We hold that there was substantial evidence of each essential element of the crime of attempted armed robbery. Accordingly, the trial court did not err in denying defendant's motions to dismiss.

[8] At the post-trial sentencing hearing, the court, over defendant's objection, admitted into evidence an F.B.I. fingerprint study alleged to be his which indicated that defendant had a prior conviction in South Carolina for aiding and abetting an armed robbery. Defendant denied that it was his record. In admitting the record, the trial court found that it was reliable hearsay and that it would be considered for the purpose of sentencing. There was no error.

Clearly the record was hearsay. *See generally,* 1 Stansbury's North Carolina Evidence §§ 138-139 (Brandis Rev. 1973). However, G.S. § 15A-1334(b) expressly provides that the formal rules of evidence do not apply in the conduct of sentencing hearings. This statute codifies the long standing rule in North Carolina that upon the conduct of a sentencing hearing, the court is permitted wide latitude and the rules of evidence are not strictly enforced. *State v. Perry,* 265 N.C. 517, 144 S.E. 2d 591 (1965); *State v. Pope,* 257 N.C. 326, 126 S.E. 2d 126 (1962). In determining

the proper sentence to impose upon a convicted defendant, it is appropriate for the trial judge to inquire into such matters as the age, character, education, environment, habits, mentality, propensities, and record of the person about to be sentenced. *State v. Thompson*, 267 N.C. 653, 148 S.E. 2d 613 (1966); *State v. Cooper*, 238 N.C. 241, 77 S.E. 2d 695 (1953). Such an inquiry is needed if the imposition of the criminal sanction is to best serve the goals of the substantive criminal law. *See State v. Woodlief*, 172 N.C. 885, 90 S.E. 137 (1916).

[9] Defendant argues that his Fifth Amendment privilege against self-incimination was violated at the sentencing hearing when the trial judge propounded questions to him about his prior criminal record. Specifically, the judge inquired whether defendant had been imprisoned in South Carolina, when he had been released, and upon what charge he had been convicted. Defendant stood at the direction of the court and answered each question. At no time did defendant assert the privilege against self-incrimination or otherwise lodge an objection. Defendant's failure to object or otherwise assert his Fifth Amendment privilege amounts to a waiver and he will not now be heard on appeal to complain. *State v. Hicks*, 290 N.C. 767, 228 S.E. 2d 252 (1976); *compare Wainwright v. Sykes*, 433 U.S. 72, 53 L.Ed. 2d 594, 97 S.Ct. 2497 (1977); *see generally* 1 Stansbury's North Carolina Evidence § 27 (Brandis Rev. 1973).

We have carefully considered all of the other assignments of error argued on appeal by defendant's able counsel and find them to be without merit. We conclude that defendant received a fair trial free from prejudicial error.

No error.