STATE OF NORTH CAROLINA
v.
MICHAEL ANTHONY SHANNON

No. COA13-214

Filed 19 November 2013

**Witnesses—intimidation—status as witness**

The trial court correctly denied defendant's motion to dismiss the charge of intimidating a witness where defendant argued that the witness had not been subpoenaed, but the State's evidence, taken in the light most favorable to the State, was sufficient to establish that the witness's involvement in defendant's custody case was substantial enough to qualify her as a prospective witness.

Judge ELMORE dissents.

Appeal by defendant from judgment entered 19 October 2012 by Judge Zoro Guice in Swain County Superior Court. Heard in the Court of Appeals 11 September 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General June S. Ferrell, for the State.*

*J. Edward Yeager, Jr., for defendant-appellant.*

CALABRIA, Judge.

Michael Anthony Shannon ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of intimidating a witness. We find no error.

In August 2010, the Swain County Department of Social Services ("DSS") filed a juvenile petition against defendant and obtained custody of defendant's minor daughter. As part of that case, defendant was referred to Appalachian Community Services ("ACS") for counseling.

On 13 September 2011, defendant went to the ACS facility and loudly demanded information from the support staff in the lobby. Kelly Phelps ("Phelps"), who was both the director of the facility and defendant's therapist, passed defendant while she was assisting another client. When she passed, defendant grabbed Phelps's left forearm with enough force to stop her and stated, in a loud and aggravated tone, that he needed to speak with her. Defendant told Phelps that he wanted to talk about his inability to see his daughter as well as the content of a letter that Phelps had written to DSS regarding defendant's treatment.

Phelps was able to convince defendant to follow her into a separate room away from the other individuals in the lobby. They subsequently began to discuss the letter. Defendant wanted Phelps to write a new letter stating that he did not require a certain treatment that was recommended. When Phelps informed defendant that she could not write a new letter, defendant became very loud. However, he calmed down when she subsequently offered to give him a copy of the letter she had sent to DSS. Phelps provided defendant with a copy of her DSS letter and made an appointment with defendant to further discuss his case. Defendant exited the ACS facility, and Phelps contacted law enforcement the next day to report the incident.

On 24 October 2011, defendant was indicted for intimidating a witness and breaking and/or entering. Beginning 18 October 2012, defendant was tried by a jury in Swain County Superior Court. At the close of the State's evidence and at the close of all the evidence, defense counsel made a motion to dismiss the charge of witness intimidation. Both motions were denied. On 19 October 2012, the jury returned verdicts finding defendant guilty of intimidating a witness and not guilty of breaking and/or entering. The trial court sentenced defendant to a minimum of 6 months to a maximum of 8 months in the North Carolina Division of Adult Correction. That sentence was suspended, and defendant was placed on supervised probation for 36 months. Defendant appeals.

Defendant's sole argument is that the trial court erred by denying his motion to dismiss. We disagree.

" 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000)(quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994). "This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

> If any person shall by threats, menaces or in any other manner intimidate or attempt to intimidate any person who is summoned or acting as a witness in any of the courts of this State, or prevent or deter, or attempt to prevent or deter any person summoned or acting as such witness from attendance upon such court, he shall be guilty of a Class H felony.

N.C. Gen. Stat. § 14-226(a) (2009).[1]

On appeal, defendant contends that his motion to dismiss should have been granted because (1) the State presented insufficient evidence that Phelps was "summoned or acting as a witness;" and (2) the State presented insufficient evidence that defendant attempted to prevent Phelps from attending court. However, at trial, defense counsel only raised the first argument, and consequently, this is the only argument properly before this Court. *See State v. Euceda-Valle*, 182 N.C. App. 268, 272, 641 S.E.2d 858, 862 (2007)(If, on appeal, a "defendant presents a different theory to support his motion to dismiss than that he presented at trial," the argument is waived.). Since defendant has waived the second argument, the only issue to determine is whether the State presented substantial evidence that Phelps was acting as a witness pursuant to the statute.

---

1. Effective 1 December 2011, N.C. Gen. Stat. § 14-226(a) was amended to make this offense a Class G felony. *See* 2011 N.C. Sess. Law 190. Defendant's offense occurred prior to the effective date of this amendment, and so we use the previous version of the statute.

Defendant argues that the State failed to prove that Phelps was acting as a witness because she had not been subpoenaed to testify in any hearing regarding defendant and there was no evidence presented that Phelps was actually going to be a witness against defendant. However, this Court has previously explained that it is unnecessary to demonstrate that an individual will definitely testify in an upcoming matter in order to qualify for protection as a witness under N.C. Gen. Stat. § 14-226(a).

In *State v. Neely*, a witness testified against the defendant during the defendant's initial trial in the City Recorder's Court of the City of Charlotte. 4 N.C. App. 475, 475, 166 S.E.2d 878, 878 (1969). After the defendant was convicted in that court and had appealed to the superior court for a trial *de novo*, the defendant threatened the witness. *Id.* Defendant was subsequently convicted of intimidating a witness and appealed to this Court. *Id.* at 476, 166 S.E.2d at 878. On appeal, the defendant argued that his conviction should have been dismissed because, when the threat was made, the witness had already completed his testimony in the first trial and was not under a subpoena to testify in the superior court trial. *Id.* This Court rejected the defendant's argument, noting that the witness "was in the position of being a prospective witness" because, at the time of the threat, the defendant had already appealed for a trial *de novo* and the defendant was trying to prevent the witness from testifying in the superior court trial. *Id.* at 476, 166 S.E.2d at 879. The Court further explained that because "[t]he gist" of the offense of intimidating a witness is the obstruction of justice, " '[i]t is immaterial . . . that the person procured to absent himself was not regularly summoned or legally bound to attend as a witness.' " *Id.* at 476-77, 166 S.E.2d at 879 (quoting 39 Am. Jur. Obstructing Justice § 6).

In the instant case, defendant was referred to Phelps for therapy because DSS required counseling for him as a condition in his child custody case. The letter which provoked defendant's actions on 13 September 2011 was provided to DSS by Phelps in order to assist DSS in resolving that case. As defendant himself acknowledged, the reason he went to ACS that day was because "[t]hat's where I got all my counseling from that DSS wanted me to go through counseling for. . . ."

Furthermore, Phelps testified that she had been called as a witness at least three or four times during her four years treating DSS clients as a therapist. She further testified that every time she wrote a letter to DSS, she was "opening [her]self up to have to testify" in court. In addition, Justin Greene ("Greene"), the attorney representing DSS in its case with defendant, testified that he had previously called Phelps as a

witness in prior cases and that he had discussed with Phelps the possibility that she could be called as a witness in defendant's case in early 2011. Taking this testimony in the light most favorable to the State, there was substantial evidence that Phelps was a prospective witness against defendant in his case with DSS.

The dissent contends that our interpretation of this Court's language in *Neely* "erroneously expand[s] the scope of N.C. Gen. Stat. § 14-226 to encompass the facts of this case." The dissent distinguishes this case from *Neely* by noting that there was arguably stronger evidence in that case that the prospective witness would be testifying against the defendant. However, nothing in *Neely* or the cases which have relied upon it suggests that the *Neely* Court was establishing a minimum standard to qualify as a "prospective witness." Instead, *Neely* was simply establishing that "prospective witness" *was the standard* by which to determine whether an individual qualifies as being a "person summoned or acting as such witness" under N.C. Gen. Stat. § 14-226(a). Thus, while we agree with the dissent that, under the statute, there must be some likelihood that the threatened individual will act as a witness, the evidence to satisfy this requirement need not be, as the dissent suggests, the same or greater than the evidence presented in *Neely*. In this context, the differences between this case and *Neely* which are highlighted by the dissent relate only to the weight of the evidence presented by the State, rather than its legal sufficiency.

Ultimately, when considered in the context of the plain language of *Neely*, the State presented sufficient evidence, when taken in the light most favorable to it, to establish that Phelps's involvement in defendant's custody case was substantial enough to qualify her as a "prospective witness" in that case. Defendant was only involved in therapy with Phelps as a result of his custody case, he confronted her regarding a letter which he knew she provided to DSS as part of that case, and the letter created a likelihood that she would have to testify regarding defendant. A reasonable juror could "accept [this evidence] as adequate to support [the] conclusion" that Phelps was a prospective witness. *Smith*, 300 N.C. at 78-79, 265 S.E.2d at 169. Accordingly, the trial court properly denied defendant's motion to dismiss. This argument is overruled.

Defendant received a fair trial, free from error.

No error.

Judge STEPHENS concurs.

ELMORE, Judge, dissenting.

I respectfully disagree with the majority's decision to find that the State presented substantial evidence that Phelps was "summoned or acting as a witness" to withstand defendant's motion to dismiss. As a result, I would reverse the decision of the trial court and dismiss the charge.

The majority relies on *State v. Neely*, where we interpreted N.C. Gen. Stat. § 14-226 broadly to include threats made to the witness (Daniels) because he was "in the position of being a prospective witness[.]" 4 N.C. App. 475, 476, 166 S.E.2d 878, 879 (1969). However, our holding in *Neely* cannot be extended to the facts of this case because Phelps was not in the position of being a prospective witness in the same way Daniels was in *Neely*. The majority has erroneously expanded the scope of N.C. Gen. Stat § 14-226 to encompass the facts of this case.

In support, the majority notes "the gist of this offense is the obstruction of justice." While I agree with this contention, the gist of an offense should not sweep over the offense itself; instead, it should merely guide our interpretation of the offense and the development of the related law.

The North Carolina Legislature codified numerous offenses in Article 30, entitled "Obstruction of Justice," which is "a common law offense in North Carolina [with broad reach.]" *Blackburn v. Carbone*, 208 N.C. App. 519, 526 703 S.E.2d 788, 794 (2010). "It is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice." *Id.* (citation and quotation omitted). The offense of "threatening or intimidating a witness" in the instant case is codified in N.C. Gen. Stat § 14-226(b). Our Supreme Court has held that "[t]here is no indication that the legislature intended Article 30 to encompass all aspects of obstruction of justice." *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983) (finding that "bribery of jurors, surely an obstruction of justice offense, [is] in Article 29, *Bribery*"). Extending this logic, I believe the purpose of N.C. Gen. Stat § 14-226(a) is to address a specific and narrow aspect of the obstruction of justice offense.

Furthermore, the majority opinion fails to account for several distinguishing factors between our decision in *Neely* and the case at hand. First, Daniels had been subpoenaed to testify against the defendant at his first trial. Here, Phelps was never subpoenaed to testify against defendant. Second, Daniels did in fact testify against the defendant at his first trial. Here, Phelps never testified against defendant during his custody dispute. While Phelps was told that she may be called as a witness, her actual participation was limited to the report she submitted. Third,

and most notably, the defendant in *Neely* knew Daniels would likely be called as a witness at the superior court trial, and his intent was to intimidate and threaten Daniels to prevent him from testifying. *Neely,* at 476, 166 S.E.2d at 879. Here, the State provided no evidence that defendant knew Phelps was a potential witness in his custody dispute. In fact, it would have been impossible for defendant to have known Phelps was a potential witness because she had not been asked to testify in court. Thus, while "the gist" of the offense of intimidating a witness is "the obstruction of justice," defendant cannot have threatened Phelps in an effort to "obstruct justice" if he was unaware of her potential involvement in the matter.[1] *See id.*

Overall, the likelihood that Phelps would testify at defendant's trial was remote – much more remote than the likelihood that Daniels would be called to testify at defendant's second trial. The fact that Phelps 1) was called as a witness approximately once per year over a period of four years, 2) testified that she "open[ed] [her]self up to have to testify" in court every time she wrote a letter to DSS, and 3) was informed in early 2011 that she may be called as a witness does not serve as substantial evidence to classify her as a potential witness. The State failed to prove beyond a reasonable doubt that Phelps was summoned or acting as a witness.

By continuing to expand the scope of N.C. Gen. Stat. § 14-226, the statute will soon engulf all aspects of the common law obstruction of justice offense – eventually persons with distant or marginal ties to a case will be afforded protection. I do not find that our legislature codified this statute for that purpose. Accordingly, I respectfully dissent from the majority's opinion. The decision of the trial court should be reversed and the charge dismissed.

---

1. Based on my reasoning above, our recent unpublished decision in *State v. Hairston,* 2013 WL 1905152 (2013) supports my position. The witness in *Hairston* had a greater prospect of being called as a witness than Phelps in the case *sub judice.*