An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-699

NORTH CAROLINA COURT OF APPEALS

Filed:  18 March 2014

STATE OF NORTH CAROLINA

v.

MELVIN BIBIAN WARNER

Cabarrus County
Nos. 11 CRS 55594, 12 CRS 1086

Appeal by defendant from judgments entered 17 December 2012 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 11 December 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Teresa M. Postell, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for defendant-appellant.*

CALABRIA, Judge.

Melvin Bibian Warner ("defendant") appeals from judgments for offenses of first degree arson, maliciously damaging occupied property by use of an explosive or incendiary device, possession of a weapon of mass destruction, and attaining habitual felon status.  We find no error.

Defendant and Ula Jones ("Ms. Jones") started dating in 2010. They initially lived next door to one another in the same cul-de-sac on Aggie Street in Kannapolis, North Carolina. Defendant subsequently moved into Ms. Jones' house at 910 Aggie Street. In late September 2011, Ms. Jones helped defendant acquire a one-bedroom apartment and changed the locks to her home.

On the evening of 7 October 2011, Ms. Jones had a male guest in her home. While Ms. Jones was entertaining her guest, defendant sent her text messages, commenting on Ms. Jones' failure to reply. On the evening of 9 October 2011, defendant and Ms. Jones communicated through a series of text and telephone messages. In one text message, defendant indicated that he had left his social security card, birth certificate, and other documents at Ms. Jones' house. Ms. Jones put the items in a bag on her front porch for defendant to collect. Later that evening, defendant sent Ms. Jones a series of messages asking her to meet him in the backyard. When Ms. Jones ignored the messages, defendant left an angry voice message stating she was "on some real bulls--t" and that she "better keep [her] head up."

On 10 October 2011, while Ms. Jones was sleeping, Ms. Jones' sixteen-year-old daughter Tracy[1] awoke around 2:00 a.m. and heard a rattle at the door. Shortly thereafter, a Molotov cocktail crashed through Ms. Jones' bedroom window and started a blaze that spread to the curtains. Ms. Jones awoke and immediately called emergency services.

Firefighters controlled the flames after about thirty minutes, but the fire rekindled. Officers from the Kannapolis Police Department ("KPD") began investigating Ms. Jones' property. In her backyard and in the woodline, they discovered several Steel Reserve 211 beer cans. Officers also discovered a dirt path leading through the woods behind Ms. Jones' house. The dirt path led through thick briars on one side and had a few muddy and waterlogged areas. Approximately forty minutes after the fire ignited, KPD Sergeant Laura Carden Smith ("Sgt. Smith") discovered defendant walking about a quarter of a mile from Ms. Jones' house. When Sgt. Smith discovered defendant, he was less than 200 yards from the path.

KPD Sergeant Allen Tomlin ("Sgt. Tomlin") subsequently joined Sgt. Smith. Sgts. Smith and Tomlin observed that defendant's pants and shoes were wet and muddy. Sgt. Tomlin not

---

[1] Because she was a minor at the time of these events, we use a pseudonym to protect her privacy and for ease of reading.

only detected an odor of alcohol on defendant's breath, but he also detected an odor of gasoline or kerosene emanating from defendant.

Defendant indicated that he was headed towards South Main Street, where his apartment was located. Defendant was walking in the opposite direction when Sgt. Smith first approached him. When Sgt. Tomlin asked defendant to consent to a search, defendant stated he "didn't have anything," then turned out his pockets and emptied the backpack he was carrying onto the patrol car. Defendant's backpack contained two lighters, a flashlight, and a few cans of Steel Reserve 211 beer, the same brand discovered in Ms. Jones' backyard and in the woodline behind the house. Defendant also had a torn rag with a strong odor of gasoline in his pocket.

KPD Investigator Jennifer Hyatt ("Investigator Hyatt") interviewed defendant shortly after Sgts. Smith and Tomlin located him. Investigator Hyatt observed that defendant's shirt was torn, and he had fresh scratches on his arms. When asked where he was at 2:00 a.m. when the fire started, defendant claimed he had been looking for work at Concord Mills Mall, and hitchhiked part of the way to and from the mall. However, Concord Mills Mall had closed at 7:00 p.m.

After interviewing defendant, Investigator Hyatt went to defendant's unoccupied previous residence at 914 Aggie Street and discovered a red plastic gas canister that appeared to have been handled recently in the crawlspace. Investigator Hyatt also detected an odor of gasoline outside 914 Aggie Street, and a search later revealed a large patch of dead grass a few feet away from the opening of the crawlspace. The landlord later indicated he had neither seen the gas canister nor poured gasoline on the grass at that residence.

On the afternoon of the day of the fire, KPD Sergeant Joe Yurco ("Sgt. Yurco") prepared an application to acquire a search warrant for defendant's residence. In the affidavit accompanying his application for the search warrant, Sgt. Yurco included numerous details regarding the circumstances of the fire. Specifically, Sgt. Yurco stated that officers located defendant approximately 600 yards from the scene of the fire wearing clothes that were wet and torn, indicating he may have used the dirt path, and that defendant possessed a torn rag soaked with gasoline when he turned out his pockets for Sgt. Tomlin. Sgt. Yurco's affidavit also included defendant's statement that he was returning from a job interview at Concord Mills Mall. Sgt. Yurco believed this was "obviously a false

statement given the fact that it was 2:30 am [sic]." Defendant also became belligerent when officers questioned him about his possible involvement with the fire.

Shortly after acquiring the search warrant, law enforcement officers arrived at defendant's residence to serve it. Despite the fact that the officers knocked and announced their presence, defendant did not answer the door. When the apartment manager unlocked the door for the officers, defendant had changed his clothes and was sitting eight feet from the door. The clothes defendant had been wearing when Sgts. Smith and Tomlin located him had been washed. Officers also found defendant's cell phone, but the battery had been removed from the phone. On a table inside the residence, officers noticed defendant's birth certificate and social security card.

Defendant was subsequently arrested and later indicted for first degree arson, malicious assault in a secret manner ("secret assault"), malicious damage to occupied property by use of an explosive or incendiary device ("malicious damage"), and possession of a weapon of mass destruction. Defendant was also indicted for attaining habitual felon status. The secret assault offense was later dismissed, and defendant was tried for the remaining offenses in Cabarrus County Superior Court.

At trial, the State presented evidence from fifteen witnesses, including Ms. Jones, Tracy, Sgt. Tomlin, Sgt. Smith, Investigator Hyatt, and Sgt. Yurco. At the close of the State's evidence, the trial court denied defendant's motion to dismiss the charges. The defense rested without offering any evidence and renewed the motion to dismiss, which the trial court again denied. On 17 December 2012, the jury returned verdicts finding defendant guilty of first degree arson, malicious damage, and possession of a weapon of mass destruction. Defendant pled guilty to attaining habitual felon status but reserved all rights of appeal. The trial court consolidated the first degree arson and malicious damage offenses into a single judgment and sentenced defendant to two consecutive terms of a minimum of 96 and a maximum of 125 months in the custody of the Division of Adult Correction. Defendant appeals.

Defendant's sole argument on appeal is that the trial court erred in denying his motion to dismiss because the evidence was insufficient to permit a reasonable juror to conclude defendant was the perpetrator of the offenses charged. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "In its analysis, the trial court must

determine whether there is substantial evidence (1) of each essential element of the offense charged and (2) that [the] defendant is the perpetrator of the offense." *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347 (2012) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The evidence should be viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992).

"Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000) (citation and quotation marks omitted). When the evidence is circumstantial, our Courts often look to motive, opportunity, capability, and identity to determine whether there is sufficient evidence to infer defendant's guilt. *State v. Hayden*, 212 N.C. App. 482, 485, 711 S.E.2d 492, 494 (2011). "Evidence of either motive or opportunity alone is insufficient to carry a case to the jury." *Id.*, 711 S.E.2d at 495 (citation omitted).

Defendant contends that pursuant to *State v. Hayden*, the evidence at trial was insufficient to establish that he was the perpetrator of the offenses. In *Hayden*, this Court held that the State presented sufficient evidence to support motive, but failed to present sufficient evidence that the defendant had either the opportunity or means to commit the offense when there was no evidence presented linking the defendant to the crime scene and no murder weapon was introduced at trial. 212 N.C. App. at 493-94, 711 S.E.2d at 500. While defendant is correct that evidence of either motive or opportunity alone is not enough to prove a defendant's identity as the perpetrator, the instant case is distinguishable from *Hayden*.

In the instant case, the State presented evidence of motive with Ms. Jones' testimony. Defendant had been upset with Ms. Jones for a number of reasons. Ms. Jones had asked defendant to move out of her home, and Ms. Jones had a male guest in her home just a few days before the fire. In addition, Ms. Jones ignored many of defendant's text messages and requests to meet him in the backyard the afternoon and evening before the fire. Furthermore, defendant had also threatened Ms. Jones mere hours before the fire, warning her to "keep [her] head up."

More importantly, the State presented evidence of opportunity and means, in addition to motive, specifically linking defendant to the crime scene. Defendant was located a mere quarter mile away from Ms. Jones' home less than an hour after the fire ignited, and his pants and shoes were wet as if he had taken the waterlogged path through the woods. Investigator Hyatt testified the fresh scratches on defendant's arms appeared to be scratches from briars. Although defendant told officers that he had been looking for work at Concord Mills Mall, and hitchhiked for part of the way to and from the mall, the mall had closed several hours before the fire started at 2:00 a.m. He also became belligerent with officers when asked about his potential involvement with the fire.

The State also presented substantial evidence that included numerous items defendant used in the offenses. The rag Sgt. Tomlin found in defendant's pocket later tested positive for gasoline, as did a soil sample collected from the yard behind defendant's prior residence at 914 Aggie Street, where the gas canister was discovered in the crawlspace. In addition, samples taken from under Ms. Jones' bedroom window tested positive for "hydrocarbons consistent with residual gasoline." Defendant was also carrying butane lighters and the same brand of beer that

was discovered in Ms. Jones' backyard. When officers served the search warrant on defendant's residence, defendant had already washed his clothes and removed the battery from his cell phone. Defendant's birth certificate and social security card, the documents Ms. Jones had left on the front porch for him to retrieve, were on a table inside his residence.

The State in the instant case presented evidence supporting a finding not only of motive, but also of opportunity and means, linking defendant both to the crime scene and to the offenses. Taken in the light most favorable to the State, the evidence supports a reasonable inference that defendant was the perpetrator of the offenses. The trial court determined there was sufficient evidence to infer defendant's guilt. "[I]t is for the jury to decide whether the facts, *taken singly or in combination*, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (emphasis in original) (citation omitted). We therefore hold the trial court properly denied defendant's motion to dismiss.

No error.

Judges BRYANT and GEER concur.

Report per Rule 30(e).