IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-682

No. COA22-163

Filed 18 October 2022

Buncombe County, No. 20 CRS 085339

STATE OF NORTH CAROLINA

v.

CHARLES VIRGAL GUICE, Defendant.

Appeal by Defendant from judgment entered 14 April 2021 by Judge Jesse B. Caldwell, III, in Buncombe County Superior Court. Heard in the Court of Appeals 24 August 2022.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Francisco Benzoni, for the State.*
>
> *Sigler Law PLLC, by Kerri L. Sigler, for Defendant.*

GRIFFIN, Judge.

Defendant Charles Virgal Guice appeals from a judgment entered upon a jury's verdict finding him guilty of communicating threats. Defendant argues that the trial court erred by denying his motion to dismiss because the charging document and the State's evidence failed to show that Defendant's words constituted a true threat. Defendant also contends the trial court erred in denying Defendant's written request for a jury instruction on true threats. We find no error.

## I.     Factual and Procedural Background

¶ 2        On 28 May 2020, an Asheville Terrace Apartments resident called security after she heard arguing as well as "a slap and . . . crying[]" in a neighboring apartment.  After security guard Christopher Lewis knocked on the neighboring apartment door, "[D]efendant came to the door and asked him what the F does he want."  Lewis testified that when Defendant opened the door "[h]e was very aggressive and angry because he got up in my face and everything."  After Lewis told Defendant he needed to leave the building, Defendant "got in [Lewis's] face aggressively and [] said that he would beat [Lewis's] little ass."

¶ 3        Lewis testified that Defendant is approximately "6 foot something," Lewis is "like 5'8"," and that Lewis had to look up to see Defendant's eyes.  Lewis further testified that he took Defendant's statement as a threat and felt like Defendant was going to carry out that threat based on "[h]is anger and his body language and the way he was coming towards me like, because he adjusted his pants and everything and then his like body language gave off like he would actually try to fight me."  Lewis called 911 while he was in the hallway trying to talk to Defendant.  Eventually, Defendant left the property without any further issues.

¶ 4        On 28 May 2020, Defendant was charged with communicating threats.  On 10 March 2021, the district court found Defendant guilty of communicating threats, and Defendant appealed to the superior court.  During the superior court trial, Defendant

moved to dismiss the communicating threats charge at the close of the State's evidence and at the close of all evidence. The superior court denied Defendant's motions to dismiss on both occasions.

¶ 5 Thereafter, Defendant requested an additional jury instruction that purportedly "track[ed] the State v. Taylor case by adding a couple of the elements that need to be prove[n]" for the communicating threats charge. The trial court judge denied Defendant's requested instruction stating that "the language that [Defendant] advances is somewhat redundant or surplusage or repetitious." The jury subsequently found Defendant guilty of communicating threats. Defendant timely appeals.

## II. Analysis

¶ 6 When First Amendment issues are raised, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *State v. Taylor*, 379 N.C. 589, 2021-NCSC-164, ¶ 44 (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984)). "This obligation supplements rather than supplants the analysis we typically utilize when reviewing a trial court's decision[,]" but "does not empower an appellate court to ignore a trial court's factual determinations." *Id.* ¶¶ 44–45. Defendant asserts "the trial court erred by denying [Defendant's] motion to dismiss under *State v. Taylor* because the

charging document and the State's evidence failed to present facts showing that [Defendant's] words were a 'true threat.'" Additionally, Defendant contends that "the trial court erred in denying defense counsel's written request for a jury instruction containing the element of 'true threat.'" We address each argument.

## A. Charging Document

¶ 7    "When a criminal defendant challenges the sufficiency of [a criminal pleading] lodged against him, that challenge presents this Court with a question of law which we review de novo." *State v. Oldroyd*, 380 N.C. 613, 2022-NCSC-27, ¶ 8 (citation omitted). Criminal pleadings function to "identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime." *State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981) (citation omitted). North Carolina law dictates that "[a] criminal pleading must contain . . . [a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense . . . ." N.C. Gen. Stat. § 15A-924(a)(5) (2021).

¶ 8    Defendant argues that "[t]he charging document failed to allege facts supporting the subjective intent component of the essential element of 'true threat' and was therefore fatally defective and should have been dismissed." True threats are a form of speech unprotected by the First Amendment. *See Watts v. United States*,

394 U.S. 705, 708 (1969); *see also Taylor*, ¶ 35. "When an individual communicates a true threat, the First Amendment allows the State to punish the individual because a true threat is not the 'type of speech [which is] indispensable to decision making in a democracy.'" *Taylor*, ¶ 35 (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 777 (1978)). The Supreme Court of the United States has defined true threats as:

> [T]hose statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur. Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

*Virginia v. Black*, 538 U.S. 343, 359–60 (2003) (citations and internal quotation marks omitted).

¶ 9 Defendant relies heavily on this Court's decision in *State v. Taylor*, 270 N.C. App. 514, 841 S.E.2d 776 (2020), and the portion of that decision affirmed by our Supreme Court in *State v. Taylor*, 379 N.C. 589, 2021-NCSC-164, to support his main argument on appeal: that the subjective component of true threats was absent at various stages throughout his trial. In *Taylor*, the defendant was convicted of "knowingly and willfully threatening to kill a court officer" under N.C. Gen. Stat. §

14-16.7(a), after the defendant "posted a string of angry comments" on Facebook that "contained troubling language" directed toward the local district attorney. *Taylor*, ¶¶ 1–3.

On appeal, this Court reversed the trial court's ruling and vacated the defendant's conviction, concluding that "his conviction violated the First Amendment" because the State was required, but failed, to prove both the subjective and objective element of a true threat. *Id.* ¶¶ 3, 14. Our Court held that "[t]he State needed to establish the objective component that [the] defendant's statements would be understood by people hearing or reading it in context as a serious expression of an intent to kill or injure" and that the defendant "intended that the statement be understood as a threat in order to satisfy the subjective component." *Id.* ¶¶ 3, 14 (quoting *Taylor*, 270 N.C. App. at 557, 841 S.E.2d at 813) (internal quotation marks omitted).

Our Supreme Court agreed with that portion of the decision, holding that the State was constitutionally required to prove the objective and subjective elements to convict the defendant under the anti-threat statute. *Id.* ¶ 42. However, our Supreme Court remanded the case for a new trial with a properly instructed jury because it found that the State's evidence was sufficient to allow a reasonable jury to conclude that the defendant had made a true threat. *Id.* ¶¶ 53–54.

In this case, Defendant was charged with communicating threats under N.C.

Gen. Stat. § 14.277.1, which states that:

> (a) A person is guilty of a Class 1 misdemeanor if without
> lawful authority:
>
> (1) He *willfully* threatens to physically injure the person or
> that person's child, sibling, spouse, or dependent or
> willfully threatens to damage the property of another;
>
> (2) The threat is communicated to the other person, orally,
> in writing, or by any other means;
>
> (3) The threat is made in a manner and under
> circumstances which would cause a reasonable person to
> believe that the threat is likely to be carried out; and
>
> (4) The person threatened believes that the threat will be
> carried out.

N.C. Gen. Stat. § 14-277.1 (2021) (emphasis added). In comparing this statute with

N.C. Gen. Stat. § 14-16.7(a), the anti-threat statute at issue in *Taylor*, it is noteworthy

that both statutes require the threat to be made "willfully." *See* N.C. Gen. Stat. § 14-

16.7(a) (2021) ("Any person who knowingly and willfully makes any threat . . . ."). In

*Taylor*, this Court acknowledged the use of this language pointing out that:

> The "knowingly and willfully" language in [N.C. Gen. Stat.]
> § 14-16.7(a) imposes an element of intent, but in this case
> the State and the trial court interpreted "knowingly and
> willfully" as meaning Defendant understood the words he
> wrote and intentionally communicated them by posting
> them on Facebook; and that Defendant knew [the district
> attorney] was a court officer. Defendant did not object on
> the basis that the statute itself should be read as requiring
> that Defendant intended his Facebook posts to threaten

anyone.

*Taylor*, 270 N.C. App. at 544, 841 S.E.2d at 805, n.9.

¶ 13          However, as the State correctly points out in the case before us, there is no evidence to suggest that the trial court here interpreted the meaning of "willfully threaten" in N.C. Gen. Stat. § 14-277.1, as the trial court in *Taylor* did for N.C. Gen. Stat. § 14-16.7(a), to mean anything other than Defendant had the specific intent to threaten to physically injure Christopher Lewis. Additionally, the trial court's jury instruction supports the argument that the trial court's interpretation of the phrase "willfully threaten" did provide for the subjective component of a true threat: "First, the state must prove beyond a reasonable doubt that defendant willfully threatened to physically injure . . . Christopher Lewis. A threat is any expression of an intent or a determination to physically injure another person. A threat is made willfully if it is made intentionally or knowingly."

¶ 14          The magistrate's order tracked the exact language of N.C. Gen. Stat. § 14-277.1, alleging that:

> [O]n or about the date of offense shown and in the county named above the [D]efendant named above unlawfully and willfully did threaten to physically injure the person of SECURITY OFFICE CHRIS LEWIS. The threat was communicated to OFFICER LEWIS by [] ORALLY SPREAKING TO LEWIS, "I'M GUNNA STOMP YOUR LITTLE ASS", WHILE OFFICER LEWIS WAS ATTEMPTING TO DO HIS JOB and the threat was made in a manner and under circumstances which would cause

a reasonable person to believe that the threat was likely to
be carried out and the person threatened believed that the
threat would be carried out.

¶ 15    Since the language of the charging document tracks the language of N.C. Gen.
Stat. § 14-277.1, which includes the subjective component of true threats, we hold
that the State sufficiently "assert[ed] facts supporting every element of [the] criminal
offense . . . ." N.C. Gen. Stat. § 15A-924(a)(5) (2021).

**B. Insufficient Evidence**

¶ 16    We review the denial of a motion to dismiss for insufficient evidence de novo.
*State v. Chekanow*, 370 N.C. 488, 492, 809 S.E.2d 546, 550 (2018) (citations omitted).
A trial court's ruling on a motion to dismiss is determined by "whether there is
substantial evidence of each essential element of the crime and [whether] the
defendant is the perpetrator." *State v. Dover*, 381 N.C. 535, 2022-NCSC-76, ¶ 28
(citations omitted). "Substantial evidence is such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71,
78, 265 S.E.2d 164, 169 (1980). "In evaluating the sufficiency of the evidence to
support a criminal conviction, the evidence must be considered in the light most
favorable to the State; the State is entitled to every reasonable intendment and every
reasonable inference to be drawn therefrom." *State v. Blagg*, 377 N.C. 482, 2021-
NCSC-66, ¶ 10 (citation omitted). "The trial court's function is to determine whether
the evidence allows a reasonable inference to be drawn as to the defendant's guilt of

the crimes charged." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982) (citation and internal quotation marks omitted). "In so doing the trial court should only be concerned that the evidence is sufficient to get the case to the jury; it should not be concerned with the weight of the evidence." *Id.* (citation omitted).

¶ 17     Defendant only challenges that the State failed to present sufficient evidence that he possessed the specific intent constitutionally required to have made a true threat. We disagree.

¶ 18     Here, Lewis testified that Defendant was "a foot or two" away from him when Defendant "got in [Lewis's] face aggressively and he said that would beat [Lewis's] little ass." Lewis further testified that he took Defendant's statement as a threat and felt like Defendant was going to carry out that threat, such that Lewis felt the need to call 911. Additionally, a witness who lived in a neighboring apartment testified that Defendant answered the door by asking Lewis "what the F" he wanted and that when Lewis arrived, Defendant was "fussing and cussing." Viewing this evidence in the light most favorable to the State, we conclude that this evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Defendant possessed the specific intent in making the threat against Lewis. *Smith*, 300 N.C. at 78, 265 S.E.2d at 169. Thus, the trial court properly denied Defendant's motion to dismiss.

**C.  Jury Instructions**

¶ 19    Finally, Defendant argues that "the trial court erred in denying defense counsel's written request for a jury instruction containing the element of 'true threat.'" We disagree.

¶ 20    This Court reviews challenges to a trial court's jury instructions de novo. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citing *State v. Ligon*, 332 N.C. 224, 241–42, 420 S.E.2d 136, 146–47 (1992); *State v. Levan*, 326 N.C. 155, 164–65, 388 S.E.2d 429, 434 (1990)). Requested jury instructions should be given when "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." *State v. Guerrero*, 279 N.C. App. 236, 2021-NCCOA-457, ¶ 9 (citations and internal quotation marks omitted). The trial court is not required to follow any strict format when instructing the jury "as long as the instruction adequately explains each essential element of the offense." *State v. Walston*, 367 N.C. 721, 731, 766 S.E.2d 312, 319 (2014) (citation and internal quotation marks omitted).

¶ 21    The trial court instructed the jury on the following, regarding Defendant's specific intent: "[S]tate must prove beyond a reasonable doubt that the defendant *willfully* threatened to physically injure . . . Christopher Lewis. A threat is any expression of an intent or a determination to physically injure another person. *A threat is made willfully if it is made intentionally or knowingly*." (Emphasis added).

Defendant's additional proposed instructions concerning the subjective component of true threats was "that [Defendant] himself specifically intended the statement to be understood as a real threat expressing his intention to carry out the actions threatened."

¶ 22    Comparing the trial court's instruction with Defendant's proposed instruction, we agree with the trial court judge that the court's instruction contained the essential elements of a true threat, namely the subjective component. Adding Defendant's language would have been redundant. The subjective component, or specific intent, of true threats is covered by defining the phrase of willfully threaten as "intentionally or knowingly" "expressi[ng] . . . an intent or a determination to physically injure another person." We therefore hold that the trial court properly instructed the jury regarding the communicating threats charge, which included the specific intent element of a true threat.

## III.    Conclusion

¶ 23    Based on the foregoing reasons, we hold Defendant received a fair trial, free from error.

NO ERROR.

Judges TYSON and ARROWOOD concur.