STATE OF NORTH CAROLINA v. TELLY ANDRE WOODS

No. COA96-676

(Filed 1 July 1997)

### 1. Criminal Law § 805 (NCI4th)— attempted robbery with a dangerous weapon—instructions—acting in concert

The trial court did not err in a prosecution for assault with a deadly weapon inflicting serious injury and attempted robbery with a dangerous weapon in its instructions on acting in concert. Attempted robbery with a dangerous weapon is a specific intent crime and assault with a deadly weapon inflicting serious injury

STATE v. WOODS

[126 N.C. App. 581 (1997)]

is not; only the attempted armed robbery conviction invokes the specific intent instruction requirements. Although *State v. Blankenship*, 337 N.C. 543, has been overruled by *State v. Barnes*, 345 N.C. 184, whether *Barnes* applies here need not be decided because the instructions given by the court comport with *Blankenship*. The instructions make it clear defendant could be found guilty of attempted robbery with a dangerous weapon only if that crime was part of the common plan.

**Am Jur 2d, Assault and Battery §§ 53, 164, 173.**

**Sufficiency of evidence to establish criminal participation by individual involved in gang fight or assault. 24 ALR4th 243.**

2. **Evidence and Witnesses § 967 (NCI4th)— assault—hospital records of victims—certification by custodian—no appearance by custodian or author—admissible**

The trial court committed no prejudicial error in a prosecution for assault with a deadly weapon inflicting serious injury and attempted robbery with a dangerous weapon by admitting hospital records of the victims with written affidavits and certifications from the custodian of the records. Defendant does not argue that admission of these records violated his constitutional right to confront witnesses and did not argue on appeal that the custodian should have been present or object at trial to the fact that the custodian was not present, but contends that the State was required to introduce the records through the medical experts who evaluated the victims. Under N.C.G.S. § 8C-1, Rule 803(6), the record is admissible once the proper foundation is established regardless of the fact that it is hearsay and the use of a record custodian's testimony is explicitly permitted. The rule does not require that this foundation be established by a medical expert as sought by defendant.

**Am Jur 2d, Evidence § 1315.**

**Admissibility under business entry statutes of hospital records in criminal case. 69 ALR3d 22.**

3. **Trial § 444 (NCI4th)— assault—medical records taken into jury room—objection to admissibility only—no error**

The trial court did not err in a prosecution for assault with a deadly weapon inflicting serious injury and attempted robbery

STATE v. WOODS

[126 N.C. App. 581 (1997)]

with a dangerous weapon by permitting the jury to take a victim's medical records to the jury room. Defendant's objection at trial was made to preserve his objection to the admissibility of the exhibit; he did not object to the decision to permit the jury to take the exhibit into the jury room, as evidenced by counsel's statement that he would not inconvenience the jury and make them sit in the courtroom to review the exhibit.

**Am Jur 2d, Trial § 1679.**

**4. Assault and Battery § 22 (NCI4th)— assault with a deadly weapon inflicting serious injury—seriousness of injury— sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss for insufficient evidence three counts of assault with a deadly weapon inflicting serious injury. Whether serious injury has been inflicted turns on the facts of the case and is generally a determination for the jury, with pertinent factors including hospitalization, pain, blood loss, and time lost at work, but evidence of hospitalization is not necessary. The State in this case presented evidence that all three victims suffered bullet wounds which required hospital treatment, one victim suffered a wound resulting from a bullet entering and then exiting his right arm, another was taken from the scene in an ambulance, suffered a bullet wound to his neck and upper shoulder, and appeared to be disoriented and in pain, and the third was treated in a hospital emergency room for a bullet wound to his upper thigh. This was sufficient to support a jury determination that all three victims suffered serious injury.

**Am Jur 2d, Pleading §§ 226-229.**

**What constitutes assault "resulting in serious bodily injury" within the Special Maritime or Territorial Jurisdiction of the United States for purposes of 18 U.S.C.A. § 113(f), providing punishment for such act. 55 ALR Fed. 895.**

Appeal by defendant from judgments and commitments entered 15 February 1996 by Judge Russell G. Walker, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 26 February 1997.

STATE v. WOODS

[126 N.C. App. 581 (1997)]

*Attorney General Michael F. Easley, by Senior Deputy Attorney General Eugene A. Smith, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender J. Michael Smith, for defendant.*

McGEE, Judge.

Defendant appeals his convictions of three counts of assault with a deadly weapon inflicting serious injury and one count of attempted robbery with a dangerous weapon. We find defendant had a fair trial free of prejudicial error.

On 13 September 1995, defendant was arrested on warrants charging him with: (1) three counts of assault with a deadly weapon inflicting serious injury for the shooting of Leroy King (95 CrS 34726), Brian Lamont Garris (95 CrS 34727), and Douglas Walter Legrand (95 CrS 34728); and (2) robbery with a dangerous weapon of Miles Bowman (95 CrS 34729). On 12 February 1996, the cases were tried with a jury at a criminal session of Forsyth County Superior Court, Judge Russell G. Walker, Jr. presiding. The jury returned verdicts of guilty on the three counts of assault with a deadly weapon inflicting serious injury and guilty on one count of attempted robbery with a dangerous weapon. On 15 February 1996, Judge Walker entered judgments and commitments on these verdicts. Defendant appeals.

At trial, the State presented evidence of the following events. On the evening of 7 September 1995, defendant, Jermaine Shore, and Larry Cason went to Miles Bowman's room at the Travel Host Motel in Winston-Salem to get change for a $100 bill. Bowman sent Brian Garris to his room to get the change. When Garris returned, Shore handed defendant a .38 caliber revolver. Defendant pointed the gun at Bowman demanding the $100 bill and the change. Bowman relinquished all the money. During this exchange, defendant shot Garris as Garris attempted to flee. Defendant also fired at Bowman but missed. Bowman testified that defendant then began shooting wildly in the parking lot of the motel hitting Douglas Legrand and Leroy King.

When an officer arrived at the scene, he found Legrand sitting on a chair with a bullet wound to his thigh and found King with a bullet wound to his neck and upper shoulder. As emergency personnel arrived, the officer learned that Garris had also been shot. At the hospital, the officer observed Garris had a bullet wound to his right arm. All three victims were treated at the hospital for their injuries.

Defendant presented evidence of the following variation of the above events. He testified he went with Shore and Cason to Bowman's room to get change but when they arrived, Shore and Cason began arguing with Bowman, demanding he return money they had given him for bad drugs. Defendant testified he walked away when he saw Shore pull out a gun and that he then heard a shot and saw Bowman running. He heard two other shots but they sounded like they came from a different gun. Defendant testified he ran towards Cason's car and he left with Shore and Cason in Cason's car.

Sandra Dashiell, an occupant of the motel, testified she heard Cason, in the presence of Woods, Shore and Legrand, plan to "hit up" Bowman. After retreating to her room, she heard a single shot. She opened her door and saw Bowman running to the front office yelling for someone to call the police and yelling "They're trying to kill me." Dashiell then heard two other shots and saw Woods, Shore, and Cason running to a white car.

Legrand testified he heard Cason and Shore stating, in his and defendant's presence, that they were going to "stick up" Bowman. Shortly thereafter, as he was knocking on Leroy King's door, Legrand heard a gunshot and saw Bowman running through the parking lot. He heard a second shot and then a third shot struck him in the back of his leg. He saw Leroy King holding his side, unable to stand up. Legrand was taken to a hospital where he was treated for his injury.

[1] Defendant first contends errors in the trial court's acting in concert instructions entitle him to a new trial. We disagree.

Defendant relies on *State v. Straing*, 342 N.C. 623, 466 S.E.2d 278 (1996) and *State v. Blankenship*, 337 N.C. 543, 447 S.E.2d 727 (1994) to support his contention that the acting in concert instructions given were prejudicial error. We first note our Supreme Court recently overruled *Blankenship* and its progeny and restored the law of acting in concert as it existed prior to *Blankenship. See State v. Barnes*, 345 N.C. 184, 230-31, 233, 481 S.E.2d 44, 69-71 (1997); *see also State v. Evans*, 346 N.C. 221, 485 S.E.2d 271 (1997) (recognizing overruling of *Blankenship*). In overruling *Blankenship*, the Court also held that application of its holding to the case on appeal did not violate constitutional prohibitions against *ex post facto* laws. *Barnes*, 345 N.C. at 233-34, 481 S.E.2d at 71-72. This problem was obviated by the fact that the crimes at issue were committed and the defendants sen-

tenced prior to the certification of *Blankenship* on 29 September 1994 so that the law on acting in concert in existence at the relevant times was identical to the law as defined and applied in *Barnes. Id.* at 234, 481 S.E.2d at 72.

Here, the crimes were committed on 7 February 1995 and defendant was sentenced on 15 February 1996. Thus, unlike the situation in *Barnes,* the law in existence when the crimes were committed and when defendant was sentenced was the law as applied in *Blankenship.* This scenario raises the issue of whether application of *Barnes* to this case would violate the constitutional prohibition on application of *ex post facto* laws.

However, we need not decide whether *Barnes* applies in this appeal because the acting in concert instructions given by the trial court comport with the law set forth in *Blankenship* and its progeny. *Blankenship* found error in acting in concert jury instructions which permitted conviction of a defendant for a specific intent crime, premeditated and deliberated murder, without a jury finding that he had specific intent to kill. *Blankenship,* 337 N.C. at 557, 562, 447 S.E.2d at 735-36, 739. The Court stated:

> Under this doctrine [acting in concert], where a single crime is involved, one may be found guilty of committing the crime if he is at the scene with another with whom he shares a common plan to commit the crime, although the other person does all the acts necessary to effect commission of the crime. . . . [W]here multiple crimes are involved, when two or more persons act together in pursuit of a common plan, all are guilty only of those crimes included within the common plan committed by any one of the perpetrators. . . . [O]ne may not be criminally responsible under the theory of acting in concert for a crime like premeditated and deliberated murder, which requires a specific intent, unless he is shown to have the requisite specific intent. The specific intent may be proved by evidence tending to show that the specific intent crime was a part of the common plan.

*Blankenship,* 337 N.C. at 558, 447 S.E.2d at 736 (internal citations omitted).

We first note that *Blankenship* and *Straing* dealt with specific intent crimes. *See Blankenship,* 337 N.C. at 557, 447 S.E.2d at 736; *Straing,* 342 N.C. at 627, 466 S.E.2d at 280. *Blankenship* does not apply to general intent crimes. *Evans,* 346 N.C. at 229, 485 S.E.2d at

275 (citing *State v. McCoy*, 122 N.C. App. 482, 485, 470 S.E.2d 542, 544, *disc. review denied*, 343 N.C. 755, 473 S.E.2d 622 (1996)). Here, attempted robbery with a dangerous weapon, one of the offenses for which defendant was convicted, is a specific intent crime. *State v. Irwin*, 304 N.C. 93, 99-100, 282 S.E.2d 439, 444 (1981). However, assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. § 14-32(b) (1993), the other offense for which defendant was convicted, is not a specific intent crime. *State v. Curie*, 19 N.C. App. 17, 20, 198 S.E.2d 28, 30 (1973) (holding intent not an element of this offense).

Since only the attempted armed robbery with a dangerous weapon conviction invokes the *Blankenship* and *Straing* specific intent instruction requirements, we address defendant's argument as to this offense only. On this offense, the trial court charged, in pertinent part, as follows:

. . . the State must prove beyond a reasonable doubt . . . that the defendant, again *acting by himself or in concert with others*, intended to rob a person . . . .

. . . that the defendant, either *acting by himself or with others*, had a firearm in his possession.

. . . that he used or threatened to use that firearm in such a way as to endanger or threaten the life of the person.

. . . that the use or threatened use of the firearm was calculated and designed to bring about the robbery and came so close to bringing it about in the ordinary and likely course of things the robbery would have been completed had it not been stopped or thwarted.

So I charge you that if you find . . . beyond a reasonable doubt that . . . Mr. Woods, *acting by himself or acting together with other persons*, intended to rob a person and that in the furtherance of this intent he possessed a firearm which he used or threatened to use in such a manner as to endanger or threaten the life of that person and that this act was designed to bring about the robbery and in the ordinary course of things would have resulted in robbery had it not been stopped or thwarted, it would be your duty to return a verdict of guilty of attempted robbery with a firearm.

(Emphasis added).

In addition, the trial court repeatedly gave an instruction on the doctrine of acting in concert when explaining the several offenses for which defendant was convicted. This instruction, repeated in substantially the same form in relation to each crime, was as follows:

> . . . I charge you that a person may be guilty of a crime even though he does not himself do all the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit a crime and are actually present at the time the crime is committed, each of them is held responsible for the acts of the others done in the commission of that crime.

In response to a jury question, the trial judge restated the acting in concert instruction for the attempted robbery with a dangerous weapon charge as follows:

> Now again, [for] a person to be guilty of a crime does not— it's not necessary for that person to do all of the acts that are required to constitute the crime. Again, if two or more persons act together *with a common purpose to commit the particular crime* and are actually present at the time *the* crime is committed, each is held responsible for the acts of the others done in the commission of *the* crime.

(Emphasis added).

We first note the trial court's general instructions on the doctrine of acting in concert differ significantly from the general acting in concert instructions given in both *Straing* and *Blankenship*. The instructions given here make it clear defendant could be found guilty of attempted robbery with a dangerous weapon only if that crime was "part of the common plan." *See Blankenship*, 337 N.C. at 558, 447 S.E.2d at 736. The instructions given comport with the statement in *Blankenship* that "specific intent may be proved by evidence tending to show that the specific intent was a part of the common plan." *See id.*

The instructions held erroneous in *Straing* and *Blankenship* shared a common flaw, *i.e.*, both sets of instructions permitted conviction of a defendant for a specific intent crime without a jury finding that the defendant had the specific intent for the particular specific intent crime charged. *See Straing*, 342 N.C. at 627, 466 S.E.2d at 281; *Blankenship*, 337 N.C. at 557, 447 S.E.2d at 735-36. This flaw is not present in the instructions given here because the instructions focus on the charged crime making it clear the jury had to find the

defendant had the specific intent to commit the crime. The focus in the general acting in concert instructions given on "common purpose to commit *a* crime" and use of the phrases "*that* crime" and "*the* crime" make it clear defendant had to have the specific intent to commit attempted robbery with a dangerous weapon. (Emphasis added). The trial judge clarified this issue further when, in response to a jury question, he restated the acting in concert instructions for attempted armed robbery with a dangerous weapon giving emphasis to acting "with a common purpose to commit *the particular crime.*" (Emphasis added). We find no error in the instructions challenged by defendant in regard to his conviction for attempted robbery with a dangerous weapon. Since the specific intent arguments made by defendant are not relevant to the instructions given on the three counts of assault with a deadly weapon inflicting serious injury, we also find no prejudicial error in these instructions.

**[2]** Defendant next contends the trial court committed prejudicial error by admitting into evidence hospital records of victims King and Garris. Specifically, he asserts the State was required to present these records through the in-court testimony of a medical expert witness to establish admissibility under N.C.R. Evid. 803(6), the business records exception to the hearsay rule.

We first note that, in his brief, defendant does not argue admission of these records violated his constitutional right to confront witnesses. Rather, he focuses on the confrontation concerns underlying the rule against admission of hearsay. As our Supreme Court has stated: "[t]he general rule against the admissibility of hearsay evidence reflects the same conviction [as the constitutional protection]: that face-to-face confrontation enhances the truth-seeking process." *State v. Deanes*, 323 N.C. 508, 524-25, 374 S.E.2d 249, 260 (1988), *cert. denied*, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989). With this in mind, we have examined the hearsay concerns expressed by defendant and find no error.

The State offered the challenged medical records by presenting written affidavits/certifications from the custodian of the records. In his brief, defendant does not contend the custodian should have been present to testify at trial. In addition, at trial, he did not object to the fact that the custodian was not present to testify in person. In fact, his attorney stated: "I'm not asking they produce the librarian." Thus, we need not address whether the affidavits/certifications were sufficient under N.C.R. Evid. 803(6), in lieu of the custodian's in-court tes-

timony, because defendant has not argued this issue on appeal and did not preserve it by objection at trial. *See* N.C.R. App. P. 28(a) (1997); N.C.R. App. P. 10(b)(1) (1997).

What defendant does contend is that the State was required to introduce these records through the medical experts who evaluated King and Garris. Defendant's contention is an attempt to obtain what N.C.R. Evid. 803(6), upon proper foundation, expressly refuses to require—the in-court testimony of the persons who made the business records (the hearsay declarants), being the medical personnel who examined King and Garris. However, under Rule 803(6), once the proper foundation for admission is established "by the testimony of the custodian or other qualified witness," the record is admissible regardless of the fact that it is hearsay. N.C.R. Evid. 803(6) explicitly permits use of a record custodian's testimony to establish a foundation for admission of the records; it does not require that this foundation be established by a "medical expert" as sought by defendant. These medical records were properly admitted under N.C.R. Evid. 803(6).

**[3]** Defendant next contends the trial court committed prejudicial error by permitting the jury to take State's Exhibit Number One, King's medical records, to the jury room without his consent.

N.C. Gen. Stat. § 15A-1233(b) (1988) provides, in pertinent part: "Upon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence." It is error for a trial court to allow a jury to take exhibits to the jury room without the consent of all parties. *See State v. Cannon*, 341 N.C. 79, 83, 459 S.E.2d 238, 241 (1995).

However, the record discloses defendant did not object to the exhibit being taken to the jury room, and in fact, consented to the jury's request. In pertinent part, the transcript reads as follows:

MR. RABIL: Your Honor, . . . if the jury requests to see those two exhibits in the jury room, does he have any objection if they ask to take those back?

MR. JOHNSON: I do.

THE COURT: You do.

MR. JOHNSON: I do object.

**STATE v. WOODS**

[126 N.C. App. 581 (1997)]

THE COURT: Well, the only alternative would be to bring them out and let them look at it.

MR. JOHNSON: Well, Your Honor, *my objection is for the record because I earlier challenged the admissibility of these records. I'm not about to inconvenience the jury and make them sit here. If it comes to that point, they'll go back.*

THE COURT: Just so we preserve your objection.

MR. JOHNSON: Just so I preserve my objection.

(Emphasis added).

At the time the jury actually requested King's medical records, the transcript reads as follows, in pertinent part:

THE COURT: The new question . . . is a request to see the medical report from Leroy King . . . . And I note your objection to the records; but preserving that objection, I will send that report in to them. Can we find in there the page or pages that deal with that specific question?

MR. RABIL: I put yellow tabs on every time it mentions a gunshot wound . . . .

MR. JOHNSON: Your Honor, I object to them calling attention. That's like the prosecutor here circling evidence and calling attention to it. The record is going to come in.

THE COURT: So you'd rather have the tabs taken off and let them peruse it?

MR. JOHNSON: Absolutely.

Although defendant lodged an objection, this objection was made to preserve his objection to the admissibility of the exhibit. He did not object to the court's decision to permit the jury to take the exhibit into the jury room. This is evidenced by defendant's attorney's statement that he would not inconvenience the jury and make them sit in the courtroom to review the exhibit. In light of defendant's consent, the court did not err by permitting the jury to take King's medical records to the jury room.

[4] Defendant's final contention is that the trial court erred by denying his motion to dismiss for insufficient evidence the three counts of assault with a deadly weapon inflicting serious injury. We disagree.

"On a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382 (1988). If substantial evidence has been presented that the defendant committed the charged offense, the motion to dismiss should be denied. *Id.* at 358, 368 S.E.2d at 383. " ' "Substantial evidence" is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *State v. Corbett* and *State v. Rhone*, 307 N.C. 169, 182-83, 297 S.E.2d 553, 562 (1982) (quoting *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981)).

Defendant was convicted of three counts of assault with a deadly weapon inflicting serious injury under G.S. § 14-32(b). "The elements of a charge under G.S. § 14-32(b) are (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Aytche*, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990).

Although defendant offers some minimal argument regarding the sufficiency of the evidence on all elements of this offense, his primary contention is that there was insufficient evidence of the "inflicting serious injury" element as to all three victims.

Whether serious injury has been inflicted turns on the facts of each case and is generally a determination for the jury. *State v. Hedgepeth*, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991). Pertinent factors for jury consideration include hospitalization, pain, blood loss, and time lost at work. *Id.* Evidence of hospitalization, however, is not necessary for proof of serious injury. *Id.*

Here, the State presented evidence that all three victims— Legrand, King, and Garris—suffered bullet wounds which required hospital treatment. This evidence showed Garris suffered a wound resulting from a bullet entering and then exiting his right arm. There was evidence that King was taken from the scene in an ambulance, that he suffered a bullet wound to his neck and upper shoulder, and that he appeared to be disoriented and in pain. As to Legrand, there was evidence that he was treated in a hospital emergency room for a bullet wound to his upper thigh. We find this evidence sufficient to support a jury determination that all three victims suffered serious injury.

As to the remaining elements of this offense, after examining the record, we find the evidence sufficient to support a jury verdict of guilty on all three counts.

IN RE LAMPARTER

[126 N.C. App. 593 (1997)]

No error.

Judges GREENE and WALKER concur.