IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-42

No. COA20-324

Filed 2 March 2021

Haywood County, No. 19 000121, 050219

STATE OF NORTH CAROLINA

v.

ANTHONY CAZAL ARNETT

Appeal by defendant from judgment entered 19 September 2019 by Judge Bradley B. Letts in Haywood County Superior Court. Heard in the Court of Appeals 10 February 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Tamara M. Van Pala, for the State.*

*Leslie Rawls for defendant-appellant.*

TYSON, Judge.

¶ 1 Anthony Cazal Arnett ("Defendant") appeals from judgments entered after a jury returned verdicts finding him guilty of assault with a deadly weapon inflicting serious injury ("AWDWISI") with two aggravating factors and guilty of attaining habitual felon status. We find no error.

## I. Background

¶ 2 Defendant was married to Karen Arnett, the complaining witness in this

matter, for about four years at the time of trial. A few months prior to the events underlying these charges, Mrs. Arnett came home from work on 21 November 2018 and found Defendant at home, drinking. He accused her of cheating on him.

¶ 3 They got into Defendant's car and drove to the grocery store. As they drove, Defendant struck Mrs. Arnett and took her cellphone. When they arrived at the store, Defendant threatened to "stomp her" if she began "showing out." Mrs. Arnett went inside the store and asked the manager to call law enforcement. Defendant was charged in the incident, and a court date was set for 23 January 2019.

¶ 4 Two days prior to trial on 21 January 2019, Mrs. Arnett arrived home from work around 3:00 p.m. Defendant was already home and had started drinking around 2:30 p.m. Defendant was drinking twenty-five-ounce High Gravity Category Five Hurricane beers. The beers are a malt liquor with a content of 8.1 percent alcohol. Defendant had ingested three beers prior to his wife arriving home. Defendant and Mrs. Arnett drove to the grocery store to purchase food and more beer. Defendant had consumed another beer by the time they returned home from the grocery store.

¶ 5 During dinner, Defendant drank yet another beer and started another. Defendant then went to a neighbor's home for marijuana. The neighbor offered Defendant Xanax instead, so Defendant took eight Xanax bars. He ingested two of them, returned home and sat down to finish his dinner.

¶ 6        Mrs. Arnett testified Defendant's demeanor had changed when he returned home.  Mrs. Arnett believed Defendant had "done something else back there besides drinking the alcohol."  Defendant stood in their bedroom and threw a beer can.  Mrs. Arnett telephoned her mother and remained on the phone so Defendant would not "put his hands on [her]."

¶ 7        A few minutes later, as Mrs. Arnett sat on the bed, Defendant came back into the bedroom and began assaulting her.  He slammed her face against the wall.  "[H]e took his fist with the rings on and hit me [] in the eye and busted my eye."  Next, "he got the knife with the little hook on it and he sat down on top of me and he brought it to my throat . . . And then he took it to my chin and cut my chin."

¶ 8        Defendant told Mrs. Arnett that she was not going to make it to court on January 23.  He got a butcher knife from the kitchen and threatened to cut her eyes.  When Mrs. Arnett put up her hands in defense, Defendant cut her arm and thumb.  Defendant also punched her repeatedly.

¶ 9        When Mrs. Arnett got up to go into the bathroom, he kicked her legs and said he would break them so she could not go to court.  Defendant cut her head and stabbed her in the side.  Mrs. Arnett testified that Defendant repeatedly punched her in the face "so nobody else would look at me."  Defendant hit Mrs. Arnett in the back of the head with a $CO_2$ air gun.  Around 3:30 a.m., Defendant went to sleep.

¶ 10        Mrs. Arnett woke up in pain around 7:20 a.m. and asked Defendant to take her

to the hospital. She offered to say whatever he wanted. He drove her to the Haywood Regional Medical Center emergency room.

¶ 11     Mrs. Arnett told the hospital staff she had fought with three women at the Dollar General store. The nurse responded the hospital was required to call law enforcement officers. Mrs. Arnett agreed.

¶ 12     Haywood County Sheriff's deputies Ken Stiles and Randy Jenkins responded to the hospital's call. Deputy Jenkins took Defendant into a separate room. Deputy Stiles then asked Mrs. Arnett what happened. She described what Defendant had done to her. Deputy Stiles smelled alcohol on Defendant, but he was not slurring his words nor stumbling while he was walking.

¶ 13     Defendant was arrested for violating the pretrial release conditions imposed from his November 2018 arrest. Upon searching him, deputies found Mrs. Arnett's cellphone, a wallet, and a hook blade pocketknife with fresh blood on it. Deputy Stoller transported Defendant to jail.

¶ 14     Mrs. Arnett's head and cheek were swollen. Both of Mrs. Arnett's eyes were black and blue. She suffered lacerations across her forehead and on her chin. She was bruised, and her hands and arms contained cuts. Her nose was broken, and she had a stab wound on her abdomen. She had a deep cut in the tendon between her thumb and index finger, which required surgery. She remained hospitalized until 24 January 2019. As a result of her injuries, Mrs. Arnett cannot grasp well with her

hand, which affects her ability to work.

¶ 15 Officers secured and executed a search warrant at the Arnetts' home. They found and collected multiple bloody items from the bedroom and bathroom. In a kitchen drawer, they found a bloody knife.

## A. Proceedings in the Trial Court

¶ 16 Defendant was indicted on charges of AWDWISI and attaining habitual felon status. The State gave notice of its intent to prove multiple aggravating factors related to the assault charge.

¶ 17 Defendant's trial counsel filed a Notice of Voluntary Intoxication Defense stating he would "show [Defendant] could not form the specific intent necessary for the crimes charged." The State submitted a memorandum of law in opposition and argued AWDWISI is not a specific intent crime and Defendant's voluntary intoxication is not a valid defense.

¶ 18 The trial court ruled AWDWISI was a general intent crime and the asserted defense of voluntary intoxication was not available to Defendant.

> [T]he Court having heard from counsel, would determine that in this particular offense, more specifically [AWDWISI], which is not the offense of intent to kill, this is a general intent crime, there is no specific intent element . . . for the charge for which the State is proceeding today, the voluntary intoxication is not available to the defendant and as such, the Court will abide by, comply with, and follow prior North Carolina precedent and not allow the defense of voluntary intoxication.

Defendant was tried by jury on 16 September 2019. The substantive offense of assault and habitual felon status trials were bifurcated.

Defendant's attorney stated he would admit an element of the physical act of the offense, but not Defendant's guilt because he lacked intent. Defendant told the court he understood his attorney would admit an element of the offense. Defendant further affirmed he had discussed this strategy with his attorney and agreed with this argument.

The trial court inquired of Defendant and his counsel as follows:

> THE COURT: [I]f you're admitting that the defendant's guilty of the offense, then we have to make a *Harbison* inquiry. . . you need to talk to your client and let me know if you're admitting that you're guilty or if you are simply admitting to some elements of the crime but denying that he's guilty.
>
> [TRIAL COUNSEL]: Given the jury instructions, Your Honor, and the fact that the jury instructions state that to find the defendant guilty, he must have intentionally assaulted and inflicted serious injury, my interpretation of that is that he is not admitting guilt, just some elements. And I have discussed that with him.
>
> THE COURT: Okay. Mr. Arnett, you understand that [Defense Counsel] is going to admit that you committed some of the elements of the crime for which you stand accused, that being [AWDWISI]?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And have you discussed that with [Defense Counsel]?

THE DEFENDANT: Yes, sir.

THE COURT: And are you in agreement with that strategy?

THE [DEFENDANT]: Yes, sir.

THE COURT: And you also understand that while he may admit to some elements, he will not be admitting that you are, in fact, guilty of that offense?

THE [DEFENDANT]: Yes, sir.

THE COURT: And you are an (sic) agreement with that?

THE [DEFENDANT]: Yes, sir.

¶ 22 Defense counsel focused much of his cross-examination of Mrs. Arnett and the investigating officers on proving elements of voluntary intoxication.

¶ 23 Defendant testified in his defense. Trial counsel's direct examination primarily focused on Defendant's consumption of intoxicants, including Xanax, during the afternoon and night of the assaults. Defendant testified that he blacked out and did not remember his actions. Defendant maintained, throughout direct and cross examinations, that his last memory is a few moments after taking the Xanax and he did not remember the later events of that night.

¶ 24 Defendant's trial counsel made an offer of proof from Dr. Andrew Ewens, an expert in toxicology and pharmacology. Dr. Ewens had reviewed and evaluated the effects of alcohol and Xanax on Defendant's actions. In Dr. Ewens' opinion, Defendant's actions were consistent with alcohol intoxication and paradoxical effects

of Xanax, which could have prevented Defendant from being in control of his actions the night of the crimes.

After hearing from Dr. Ewens, the trial court declined to change its ruling to exclude the defense of voluntary intoxication and declined to give the jury charge on the defense of voluntary intoxication.

Prior to closing arguments, the trial court again inquired of Defendant and his counsel in reference to his admissions under *Harbison*:

> THE COURT: Okay. [Defense Counsel], do you plan on making any admissions of guilt pursuant to *North Carolina versus Harbison* in closing?
>
> [DEFENSE COUNSEL]: Just as a I previously stated, Your Honor, that Mr. Arnett does not deny the actual physical act; however, does deny per the jury instructions that he acted intentionally as to even the overt act itself, not just the harm related.
>
> THE COURT: Okay. And Mr. Arnett, as we discussed earlier, you understand [Defense Counsel] would be admitting that the assault occurred, he's just denying that you were guilty of it because you did not intend for it to occur. Is that correct?
>
> THE DEFENDANT: That's correct, sir.
>
> THE COURT: And you're in agreement with that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay.

### B. Verdicts and Sentence

The jury convicted Defendant of AWDWISI and found two aggravating factors existed beyond a reasonable doubt. Following the habitual felon trial, the jury found Defendant guilty of being a habitual felon.

At sentencing, the trial court found aggravating factors outweighed mitigating factors. Defendant was sentenced in the aggravated range to an active term of 120-156 months in prison. Defendant timely filed written notice of appeal.

## II. Jurisdiction

Defendant's right to appeal arises from the final judgments entered. N.C. Gen. Stat. §§ 7A–27(b)(1), 15A–1444(a) (2019).

## III. Issues

The issues before this Court are whether: (1) the trial court correctly ruled Defendant's defense of voluntary intoxication did not apply to his assault charge; (2) the trial court's *Harbison* inquiries were adequate; and, (3) Defendant's counsel's concession denied him effective assistance of counsel.

## IV. Voluntary Intoxication Defense

The Supreme Court of the United States explained the difference between the general intent crimes and specific intent crimes:

> [A] person entered a bank and took money from a teller at gunpoint, but deliberately failed to make a quick getaway from the bank in the hope of being arrested so that he would be returned to prison and treated for alcoholism. Though this defendant knowingly engaged in the acts of

> using force and taking money (satisfying "general intent"),
> he did not intend permanently to deprive the bank of its
> possession of the money (failing to satisfy "specific intent").

*Carter v. United States*, 530 U.S. 255, 268, 147 L.Ed.2d 203, 215-16 (2000) (internal citations omitted).

¶ 32        Voluntary intoxication is a defense only to a crime that requires a showing of specific intent. *State v. Harvell*, 334 N.C. 356, 368, 432 S.E.2d 125, 132 (1993), (citing *State v. Jones* 300 N.C. 363, 365, 266 S.E.2d 586, 586 (1980)). Trial counsel admitted the assault but argued to the jury that Defendant had consumed so much alcohol and Xanax, he could not intentionally do anything and did not know what he was doing.

¶ 33        AWDWISI is not a specific intent crime. State v. Woods, 126 N.C. App. 581, 587, 486 S.E.2d 255, 258 (1997). Voluntary intoxication was never a legal defense available to Defendant.

## V.        *Harbison* Inquiry

### A. Standard of Review

> Although this Court still adheres to the application of the *Strickland* test in claims of ineffective assistance of counsel, there exist circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. We [] hold that when counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed.

*State v. McAllister*, 375 N.C. 455, 463, 847 S.E.2d 711, 716 (2020) (alterations,

citations, and internal quotations omitted) (emphasis supplied).

## B. *Harbison*

¶ 34    Defendant argues the trial court erred by failing to make an adequate inquiry

under *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985).

> A defendant's right to plead not guilty has been carefully
> guarded by the courts. When a defendant enters a plea of
> not guilty, he preserves two fundamental rights. First, he
> preserves the right to a fair trial as provided by the Sixth
> Amendment. Second, he preserves the right to hold the
> government to proof beyond a reasonable doubt.
>
> . . . .
>
> A plea decision must be made exclusively by the defendant.
> A plea of guilty or no contest involves the waiver of various
> fundamental rights such as the privilege against self-
> incrimination, the right of confrontation and the right to
> trial by jury. Because of the gravity of the consequences, a
> decision to plead guilty must be made knowingly and
> voluntarily by the defendant after full appraisal of the
> consequences.

*Id.* at 180, 337 S.E.2d at 507 (internal citations, quotation marks and alterations

omitted).  Defendant proffers several cases to support his argument that a *Harbison*

violation occurred.

### 1. *State v. Foreman*

¶ 35    The issue in *Foreman* was whether the defendant "received ineffective

assistance of counsel when his trial counsel conceded [the [d]efendant's guilt to

AWDWISI without his knowing and voluntary consent." *State v. Foreman*, ___ N.C. App. ___, ___, 842 S.E.2d 184, 185 (2020). In *Foreman*, defendant's counsel introduced a "*Harbison* Acknowledgement" prior to opening statements. *Id*. The sworn statement was signed by the defendant and his trial counsel, and stated:

> [I], hereby give my informed consent to my lawyer(s) to tell the jury at my trial that I am guilty of Assault with a Deadly Weapon Inflicting Serious Injury. I understand that:
>
> 1. I have a right to plead not guilty and have a jury trial on all of the issues in my case.
>
> 2. I can concede my guilt on some offenses or some lesser offense than what I am charged with if I desire to for whatever reason.
>
> 3. My lawyer has explained to me, and I understand that I do not have to concede my guilt on any charge or lesser offense.
>
> 4. My decision to admit that I am guilty of Assault with a Deadly Weapon Inflicting Serious Injury is made freely, voluntarily and understandingly by me after being fully appraised of the consequences of such admission.
>
> 5. I specifically authorize my attorney to admit that I am guilty of Assault with a Deadly Weapon Inflicting Serious Injury.

The trial court found the defendant had, "been advised of his attorney's intention to admit his guilt to [AWDWISI." *Id*. at ___, 842 S.E.2d at 187.

The jury found the defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, attempted first-degree murder, and felonious

breaking and entering. *Id.* The defendant appealed "alleging he was denied effective assistance of counsel because his concession of guilt to AWDWISI was not knowing or voluntary." *Id.*

This Court held:

> Defendant's consent to his concession of guilt for AWDWISI was knowing and voluntary. Defendant confirmed that he understood the ramifications of conceding guilt to AWDWISI and that he had the right to plead not guilty. Defendant's counsel filed the *Harbison* Acknowledgment in which Defendant expressly gave his trial counsel permission to concede guilt to AWDWISI after "being fully appraised of the consequences of such admission." In this case, the facts show that Defendant knew his counsel was going to concede guilt to AWDWISI, and the trial court properly ensured that Defendant was aware of the ramifications of such a concession.

*Id.* at ___, 842 S.E.2d at 188.

Here, Defendant was present for two separate *Harbison* inquires, one at the beginning and one at the end of trial. He was addressed personally by the trial court both times and confirmed he understood and consented to his counsel's actions prior to any purported admission by his counsel.

Defendant heard the trial court's ruling that voluntary intoxication would not be allowed as a defense to his general intent crime. Trial counsel told the court he had discussed this admission of physical acts with his client. The court asked Defendant if he understood his attorney would be admitting some elements of the

offense after the trial court had denied the voluntary intoxication defense.

> [DEFENSE COUNSEL]: -- [I]f you look at the jury instructions, Your Honor, they do state intentionally. Expert witness or not, voluntary intoxication defense or not, we still intend to present that defense to the jury.
>
> THE COURT: You can certainly elicit testimony and Mr. Arnett can certainly testify in the manner he deems appropriate. And [we're] just not going to submit as a substantive defense to the jury of involuntary intoxication.

¶ 41      Defendant was given an oral explanation of trial counsel's strategy to admit one element of the crime knowing his voluntary intoxication would not suffice as a defense. Defendant was directly addressed by the trial court to confirm his understanding and agreement to his counsel's plans and strategy. The *Harbison* inquiries as well as the conversation leading up to them are adequate to show Defendant was thoroughly advised and knowingly consented to his attorney's admission to the jury. *Foreman* does not compel a different result under these facts. *Id.*

## 2. *State v. Fisher*

¶ 42      As the trial court correctly noted, defense counsel can admit an element of a charge without triggering a *Harbison* violation. Our Supreme Court stated: "Although counsel stated there was malice, he did not admit guilt, as he told the jury that they could find the defendant not guilty." *State v. Fisher,* 318 N.C. 512, 533, 350 S.E.2d 334, 346 (1986).

¶ 43        Defense counsel in *Fisher* stated to the jury:

> You heard [the defendant] testify, *there was malice there*[,]
> and then another possible verdict is going to say[,] "Do you
> find him guilty of voluntary manslaughter[?] Voluntary
> manslaughter is the killing of a human being without
> malice and without premeditation. It's a killing. And it also
> has not guilty, remember that too.

*Id*. (emphasis supplied).

¶ 44        Our Supreme Court held counsel's admission in *Fisher* was "factually distinguishable from [the violation in] *Harbison* in that the defendant's counsel never clearly admitted guilt." *Id*. Rather, defense counsel "stated there was malice [and] . . . told the jury that they could find the defendant not guilty." *Id*.

¶ 45        Like the defendant in *Fisher*, Defendant's counsel conceded Defendant had committed an element of the crime. Trial counsel told the court he planned to admit an element of the offense, but not all of the elements. When asked to clarify, trial counsel said he would not deny Defendant's physical acts but would deny the assault was intentional based on Defendant's not remembering his actions due to voluntary intoxication.

¶ 46        Here, trial counsel admitted an element of the assault charge, rather than admitting guilt to the charge. *Id*. The holding in *Fisher* does not support a reversal in this case.

### 3.  *State v. McAllister*

¶ 47        Our Supreme Court stated in *McAllister*, "we consider whether *Harbison* error exists when defense counsel impliedly—rather than expressly—admits the defendant's guilt to a charged offense. [It is] our determination that the rationale underlying *Harbison* applies equally in such circumstances." *Id*. at 456, 847 S.E.2d at 712.

¶ 48        In *McAllister*, the trial court asked defense counsel if they had a *Harbison* issue prior to opening statements. *Id*. at 459, 847 S.E.2d at 714. The exchange between defense counsel and the court follows:

> THE COURT: Are you expecting to make any [*Harbison*] comments in your opening with regard to admissions?
>
> [DEFENSE COUNSEL]: Well, Judge, we have a lot to say about how and why he was interrogated which may brush up against—
>
> THE COURT: Well, can you get more specific than that. Because I want to make sure your client understands that the State has the burden to prove each and every element of each claim and if you're going to step into an admission during opening then I need to make sure that he understands that and he's authorized you to do that.
>
> [DEFENSE COUNSEL]: Not in opening, I can stipulate to that.

*Id*. No discussion related to *Harbison* took place throughout the remainder of the trial. *Id*. In defense counsel's closing argument, he made these statements to the jury:

> You heard [the defendant] admit that things got physical.

> You heard him admit that he did wrong, God knows he did.
> They got in some sort of scuffle or a tussle or whatever they
> want to call it, she got hurt, he felt bad, and he expressed
> that to detectives.

*Id*. at 461, 847 S.E.2d at 715. "[T]he jury returned a verdict finding defendant guilty of assault on a female and not guilty of all other charged offenses." *Id*.

¶ 49        On appeal, our Supreme Court reasoned, "The only logical inference in the eyes of the jury would have been that defense counsel was implicitly conceding defendant's guilt as to that charge. *Id*. at 474, 847 S.E.2d at 723. Further, the *Harbison* issue was never mentioned again throughout the remainder of the trial, and thus the *Harbison* inquiry in *McAllister* was inadequate. *Id*.

¶ 50        Here, Defendant did not deny committing the physical acts toward his wife on direct testimony, and trial counsel stated he was not denying the acts occurred. Unlike the defendant in *McAllister*, the trial court, defense counsel, and Defendant engaged in multiple separate and extensive colloquies, prior to trial and again prior to closing arguments, to address Defendant and his counsel's intent to admit Defendant's physical acts, but not his intent prior to the admission.

¶ 51        Trial counsel stated, "I do have some written [*Harbison*] forms necessary for [Defendant] to sign." Defendant agreed to the admissions prior to trial and to opening and closing statements. Trial counsel did not specifically admit Defendant's guilt to the crime charged. The holding in *McAllister* does not support error, prejudice, or

reversal under these facts. *Id.*

## VI. Ineffective Assistance of Counsel

### A. Standard of Review

As noted, *Harbison* errors may also exist when "defense counsel impliedly—rather than expressly—admits the defendant's guilt to a charged offense." *Id.* at 456, 847 S.E.2d at 712.

> Although this Court still adheres to the application of the *Strickland* test in claims of ineffective assistance of counsel, there exist circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. We [] hold that when counsel *to the surprise of his client admits his client's guilt,* the harm is so likely and so apparent that the issue of prejudice need not be addressed.

*Id.* at 463, 847 S.E.2d at 716 (emphasis supplied) (alterations, citations, and internal quotations omitted)

### B. Analysis

Here, there was no surprise to Defendant of defense counsel's admissions. Defendant testified to the acts which occurred and sought to excuse his culpability based upon his voluntary intoxication. The timing, nature, extent, cause and motive for Mrs. Arnett's injuries was never in dispute. A bloody knife with a hooked blade was recovered from Defendant's person at the hospital. A bloody butcher knife was found in the kitchen drawer at the Arnetts' home.

The trial court correctly ruled Defendant's proffered voluntary intoxication to mitigate or excuse Defendant's actions was not available as a defense to the assaults, which requires only proof of a general intent. Defendant testified, was cross examined, and clearly consented to trial counsel's acknowledgement of Defendant's actions against his wife to the jury during closing argument. The record shows a deliberate, knowing, and consented to trial strategy in the face of overwhelming and uncontradicted evidence of Defendant's guilt. Defendant has failed to show his trial counsel's performance and conduct was deficient. Defendant's argument is without merit and overruled.

## VII.    Conclusion

Defendant argues he could not knowingly and understandingly consent to counsel's admitting the assault. Defendant further argues the trial court's *Harbison* inquiry was inadequate to confirm Defendant understood and knew he was agreeing for counsel admit the charged offense and present an invalid defense.

The trial court personally inquired of Defendant on two occasions to ensure he understood and agreed with this strategy after the court had denied the involuntary intoxication defense and to so instruct the jury. The *Harbison* inquiry adequately established Defendant fully understood his counsel was admitting an element of the charge.

Defendant did not receive ineffective assistance of counsel when his trial counsel admitted an element of the charged offense with Defendant's prior knowledge and consent. Defendant received a fair trial free from prejudicial errors he preserved and argued. We find no error in the jury's verdicts or in the judgments entered thereon. *It is so ordered.*

NO ERROR.

Judges INMAN and HAMPSON concur.