IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-772

Filed 4 June 2025

Mecklenburg County, Nos. 22 CR 215746-590, 22 CR 215747-590, 23 CR 009591-590

STATE OF NORTH CAROLINA

v.

LAKEVIS ANTRUAN MALOYE, Defendant.

Appeal by Defendant from judgment entered 26 January 2024 by Judge Matthew Osman in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 April 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Kimberly M. Lott, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender David S. Hallen, for defendant-appellant.*

STADING, Judge.

Lakevis Antruan Maloye ("Defendant") appeals from final judgment after a jury convicted him of assault with a deadly weapon inflicting serious injury ("AWDWISI") and possession of a firearm by a felon. Defendant pled guilty to obtaining habitual felon status. On appeal, Defendant asserts the trial court committed error by denying his motion to dismiss since there was insufficient evidence he inflicted serious injury. For the reasons below, we discern no error.

## I.    Background

A Mecklenburg County grand jury returned true bills of indictment charging Defendant with assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI"), possession of a firearm by a felon, and having obtained habitual felon status.  *See* N.C. Gen. Stat. §§ 14-7.1, 14-32(a), and 14-415.1 (2023). Defendant's trial commenced on 23 January 2024, and the evidence tended to show the following:

At around 10:30 p.m. on 17 May 2022, Ruby and Jerome Stewart drove to a local convenience store to "get some cigarettes and a case of beer."  Mrs. Stewart remained in the front passenger seat of the vehicle while Mr. Stewart went into the store; at the time, Mr. Stewart possessed a .380 caliber handgun holstered on his person. After purchasing "a pack of Newports and a 12-pack of Coronas," Mr. Stewart exited the store and walked back to his vehicle.  Mr. Stewart heard "somebody say . . . something" while walking, prompting him to turn his head.  Immediately after, Mr. Stewart saw a masked assailant pointing a revolver at his face.

Mr. Stewart attempted to grab the assailant's gun without success.  In doing so, the assailant's "gun went off," striking Mr. Stewart in the leg.  Mr. Stewart then threw his beer at the assailant, ran away, and started shooting at the assailant with his own firearm.  Throughout this time, the assailant continued firing shots at Mr. Stewart while ducking behind a car.  The assailant eventually "took off and ran around the building" before the police arrived.  However, Mr. and Mrs. Stewart

instantly identified the assailant as Defendant. Mr. Stewart recognized Defendant based on his voice, beard, and eyes, and Mrs. Stewart recognized Defendant based on prior dealings at her place of employment. Officer Mario Soares of the Charlotte-Mecklenburg Police Department also "immediately recognized" Defendant as the masked assailant upon reviewing the surveillance footage based on "prior history" and "daily interactions."

Law enforcement arrived on the scene shortly after the firefight ceased. Officer James Tindall of the Charlotte-Mecklenburg Police Department was the first to arrive, observing "a broken case of beer in the center of the parking lot" and Mr. Stewart "leaning on his right leg." Upon closer inspection, Officer Tindall saw "a bullet graze wound" to Mr. Stewart's left thigh, prompting him to call for medical assistance. The paramedics placed Mr. Stewart in an ambulance to treat his gunshot wound. However, Mr. Stewart did not go to the hospital at this time because he was worried about his "son that was at home and had seizures . . . ."

Following the incident, Mr. Stewart "went to the doctor," but treated the injury by himself at home; he never attended a hospital for treatment. Mr. Stewart testified he treated the gunshot wound daily by taking 800 milligrams of ibuprofen and cleaning it with hydrogen peroxide. He also testified to missing "a little over a month" of work because of the injury. Mr. Stewart added the gunshot wound did not "start hurting [until] the next day," attributing it to a surge of adrenaline at the time of the shooting. Mrs. Stewart similarly noted that following the incident:

[MRS. STEWART]: [Mr. Stewart] was in a lot of pain. It hurt to walk being that it was his inner thigh. We had to clean it a whole lot, a whole lot being that he didn't go to the hospital. So it was a lot of cleaning, a lot of nasty bandages. It was pretty bad. It was -- he had a lot of trouble walking like.

[PROSECUTOR]: For about how long afterwards?

[MRS. STEWART]: Maybe a month.

[PROSECUTOR]: Okay. And when you're saying trouble walking because that kind of – you can take that one of two ways.

[MRS. STEWART]: Right. He could walk. He could walk. It just hurts to walk because it rubbed that wound.

By the time of trial, Mr. Stewart still felt "burning" and "tingling" sensations in his thigh as a result of the shooting.

At the close of the State's evidence, Defendant moved for dismissal of his AWDWIKISI charge, arguing the State failed to present sufficient evidence as to each element of the offense. Defendant maintained "the State ha[d] not proven that [he] was the person who committed the crime," and there was a "lack of evidence" demonstrating Mr. Stewart suffered a serious injury—a necessary element of AWDWIKISI. The trial court denied the motion. Defendant elected not to present evidence in his defense, rested, and renewed his motion to dismiss at the close of all evidence. Again, the trial court denied the motion.

Upon deliberation, the jury convicted Defendant of AWDWISI, a lesser included offense of AWDWIKISI, and possession of a firearm by a felon. Defendant

then pled guilty to obtaining habitual felon status. The plea arrangement provided the following pertinent details:

> Defendant was found guilty by a jury of the class E felony of Assault with Deadly Weapon Inflicting Serious Injury (22 CR 215746) and the class G felony of Possession of Firearm by Felon (22 CR 215747). Defendant admits his status as an Habitual Felon (23 CR 9591), statutorily enhancing his sentence under the North Carolina Structured Sentencing Act to a Class C felony for both of the underlying felonies. The underlying felonies will be consolidated for sentencing under 22 CR 215746. Defendant will be sentenced in the presumptive range in the discretion of the Court.

Accounting for Defendant's habitual felon status and prior record level, he received a consolidated sentence of 131 to 170 months imprisonment for all offenses. Defendant entered an oral notice of appeal in open court.

## II.    Jurisdiction

This Court has jurisdiction over Defendant's appeal pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) ("From any final judgment of a superior court . . . .") and 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

## III.    Analysis

Defendant submits one issue for our consideration: Whether the trial court committed error by denying his motion to dismiss the AWDWIKISI charge. Defendant maintains "the State failed to present substantial evidence demonstrating

he inflicted serious injury." After careful consideration, we disagree.

"Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Tucker*, 380 N.C. 234, 236, 867 S.E.2d 924, 927 (2022) (quoting *State v. Crockett*, 368 N.C. 717, 720, 782 S.E.2d 878, 881 (2016)). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citation omitted).

"The question for a court on a motion to dismiss for insufficient evidence 'is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.'" *Tucker*, 380 N.C. at 236, 867 S.E.2d at 927 (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980); *see also State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015) ("Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion."). When there is substantial evidence, "the motion is properly denied." *Powell*, 299 N.C. at 98, 261 S.E.2d at 117. But "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *Id.*

"In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Tucker*, 380 N.C. at 237, 867 S.E.2d at 927. "Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered." *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347 (2012) (citation omitted); *see also Tucker*, 380 N.C. at 237, 867 S.E.2d at 927 ("Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve."). In determining whether evidence is substantial, a court must apply the following test:

> The trial court is not required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying the defendant's motion to dismiss. The test of the sufficiency of the evidence to withstand the motion is the same whether the evidence is direct, circumstantial or both. That test is whether a reasonable inference of the defendant's guilt may be drawn from the evidence. If so[,] the evidence is substantial and the defendant's motion to dismiss must be denied.

*State v. Malloy*, 309 N.C. 176, 178–79, 305 S.E.2d 718, 720 (1983) (internal citations omitted). "Thus, the evidence need only give rise to a reasonable inference of guilt for the case to be properly submitted to the jury." *State v. Barnett*, 141 N.C. App. 378, 383, 540 S.E.2d 423, 427 (2000).

In the instant case, Defendant was charged with AWDWIKISI, but convicted of AWDWISI—a lesser included offense of AWDWIKISI. *Compare* N.C. Gen. Stat. § 14-32(a) ("Any person who assaults another person with a deadly weapon with intent

to kill and inflicts serious injury shall be punished as a Class C felon."); *with* N.C. Gen. Stat. § 14-32(b) ("Any person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon."); *see also State v. Nickerson*, 365 N.C. 279, 282, 715 S.E.2d 845, 847 (2011) (In determining whether a crime is a lesser-included offense, "the test is whether the essential elements of the lesser crime are essential elements of the greater crime. If the lesser crime contains an essential element that is not an essential element of the greater crime, then the lesser crime is not a lesser included offense."); *see also State v. Cromartie*, 177 N.C. App. 73, 76, 627 S.E.2d 677, 680 (2006) ("The only difference in what the State must prove for the offense of assault with a deadly weapon inflicting serious injury and assault with a deadly weapon with intent to kill inflicting serious injury is the element of intent to kill."). "The elements of AWDWISI are: (1) an assault, (2) with a deadly weapon, (3) inflicting serious injury, (4) not resulting in death." *State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000). Defendant solely contests the sufficiency of the evidence as to the serious injury element—a necessary element to support a conviction for both AWDWISI and AWDWIKISI. *See* N.C. Gen. Stat. § 14-32(a)–(b); *see also Cromartie*, 177 N.C. App. at 76, 627 S.E.2d at 680.

"We have repeatedly defined the serious injury element of N.C. [Gen. Stat.] § 14-32 to mean a physical or bodily injury." *State v. Everhardt*, 326 N.C. 777, 780, 392 S.E.2d 391, 392 (1990); *see also State v. Alexander*, 337 N.C. 182, 188–89, 446 S.E.2d 83, 87 (1994) (citations omitted) ("The term 'inflicts serious injury,' under G.S. 14-

32(b), means physical or bodily injury resulting from an assault with a deadly weapon."); *see also State v. Bagley*, 183 N.C. App. 514, 526, 644 S.E.2d 615, 623 (2007); *see also State v. Joyner*, 295 N.C. 55, 65, 243 SE.2d 367, 373 (1978); *see also State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962). "[W]hether an injury is serious within the meaning of AWDWISI is usually a factual determination that rests with the jury." *Bagley*, 183 N.C. App. at 526, 644 S.E.2d at 623; *see also State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997) ("Whether serious injury has been inflicted turns on the facts of each case and is generally a determination for the jury.").

"A jury may consider such pertinent factors as hospitalization, pain, loss of blood, and time lost at work in determining whether an injury is serious. Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury." *State v. Hedgepeth*, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991) (internal citation omitted); *see also Woods*, 126 N.C. App. at 592, 486 S.E.2d at 261; *see also Joyner*, 295 N.C. at 65, 243 S.E.2d at 374. "[A]s long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, it is for the jury to determine the question of whether the injury was serious." *Alexander*, 337 N.C. at 189, 446 S.E.2d at 87; *see also Joyner*, 295 N.C. at 65, 243 S.E.2d at 374 ("[T]here being evidence of physical or bodily injury to the victim, the question of the nature of these injuries was also properly submitted to the jury.").

Contrary to Defendant's urging, the State presented substantial evidence, allowing a juror to reasonably infer he inflicted a serious injury upon Mr. Stewart.

*See Hedgepeth*, 330 N.C. at 53, 409 S.E.2d at 318; *see also Smith*, 300 N.C. at 78, 265 S.E.2d at 169. The record evidence shows Defendant shot Mr. Stewart in the leg with a revolver during the altercation and suffered a "physical or bodily injury resulting from" Defendant's "assault with a deadly weapon." *Alexander*, 337 N.C. at 188–89, 446 S.E.2d at 87. In addition, Mr. Stewart testified to missing "a little over a month" of work because of the injury—one of the pertinent factors a jury may consider in determining whether the injury was serious. *See Hedgepeth*, 330 N.C. at 53, 409 S.E.2d at 318. Moreover, when discussing the gunshot wound, Mr. Stewart testified to being in pain following the incident, including having trouble walking, sitting, and laying down. *See Tucker*, 380 N.C. at 237, 867 S.E.2d at 927; *see also Hedgepeth*, 330 N.C. at 53, 409 S.E.2d at 318.

Mrs. Stewart similarly testified as a result of the gunshot wound: Mr. Stewart "was in a lot of pain"; Mr. Stewart had trouble walking; her and Mr. Stewart had to clean the wound "a whole lot being that he didn't go to the hospital"; and the cleaning produced "a lot of nasty bandages." This testimony speaks to several other pertinent factors a jury may consider when determining whether an injury was serious. *See Hedgepeth*, 330 N.C. at 53, 409 S.E.2d at 318. Although Defendant challenges the lack of evidence demonstrating Mr. Stewart was hospitalized, our previous decisions reflect "[e]vidence of hospitalization . . . is not necessary for proof of serious injury." *Woods*, 126 N.C. App. at 592, 486 S.E.2d at 261; *see also Hedgepeth*, 330 N.C. at 53, 409 S.E.2d at 318; *see also Joyner*, 295 N.C. at 65, 243 S.E.2d at 374.

Viewing the evidence in the light most favorable to the State, resolving any contradictions in the evidence in favor of State, substantial evidence demonstrates Mr. Stewart sustained a serious injury as a result of Defendant's assault with a deadly weapon. *Tucker*, 380 N.C. at 237, 867 S.E.2d at 927; *see also Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347; *see also Smith,* 300 N.C. at 78, 265 S.E.2d at 169. Substantial evidence includes the testimonies of Mr. and Mrs. Stewart articulating his pain, "nasty bandages," difficulty with daily tasks, and time lost at work. *See also Hedgepeth*, 330 N.C. at 53, 409 S.E.2d at 318; *see also Alexander*, 337 N.C. at 189, 446 S.E.2d at 87. Accordingly, we hold the trial court did not commit error by denying Defendant's motion to dismiss and submitting the charge for the jury's consideration.

## IV.    Conclusion

Since the State presented substantial evidence demonstrating Defendant inflicted a serious injury on Mr. Stewart, the trial court did not commit error by denying Defendant's motion to dismiss.


NO ERROR.

Chief Judge DILLON and Judge WOOD concur.